DAVID GOLUBCHIK (State Bar No. 185520)
CARMELA T. PAGAY (State Bar No. 195603)
TODD M. ARNOLD (State Bar No. 221868)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: DBG@LNBYG.COM; CTP@LNBYG.COM; TMA@LNBYG.COM

Attorneys for Debtor and Debtor in Possession

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>ARKADIY LYAMPERT,<br>aka Arie Lyampert,<br><br>    Debtor and Debtor in Possession. | Case No. 1:25−bk−12344−VK<br><br>Chapter 11 Case<br><br>**NOTICE OF *EX PARTE* MOTION AND *EX PARTE* MOTION, PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004, LOCAL BANKRUPTCY RULE 2004-1, AND THE HAGUE CONVENTION FOR (1) THE PRODUCTION OF DOCUMENTS BY LA MICRO GROUP (UK) LIMITED AND ORAL EXAMINATION OF DAVID BELL AND (2) THE ISSUANCE OF A LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE TO COMPEL THE FOREGOING; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS IN SUPPORT THEREOF**<br><br>[No Hearing Required Pursuant to Local Bankruptcy Rule 2004-1]<br><br>Proposed Document Production Date/Time:<br>  Date:    April 17, 2026<br>  Time:    10:00 a.m. (PST)<br>  Place:    Levene, Neale, Bender, Yoo<br>        & Golubchik L.L.P.<br>        2818 La Cienega Avenue<br>        Los Angeles, California 90034<br><br>**[Continued on Following Page]** |

1

Proposed Examination Date and Time:
 Date:   May 1, 2026
 Time:   6:00 a.m. (PST)/2:00 p.m. (Local UK Time)
 Place:   Via Zoom or Other Teleconferencing Service

**PLEASE TAKE NOTICE** that Arkadiy Lyampert aka Arie Lyampert, debtor and debtor in possession in the above-referenced chapter 11 bankruptcy case (the "Debtor"), hereby moves, pursuant to this motion (the "Motion"), Rule 2004 ("Rule 2004") of the Federal Rules of Bankruptcy Procedure ("FRBP"), Rule 2004-1 of the Local Bankruptcy Rules ("LBR 2004-1"), and the March 18, 1970 Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention")[1] for an order:

(1) directing LA Micro Group (UK) Limited ("LAMUK") to produce the documents (the "Documents") listed in **Exhibit "1"** hereto, at the above-referenced date, time, and location (the "Document Production"), provided that, since LAMUK is a United Kingdom ("UK") entity and the Document Production may have to be compelled pursuant to the Hague Convention and a Letter of Request for International Judicial Assistance (a "Letter of Request") issued thereunder, the Document Production date, time, and location may be extended or otherwise amended by agreement of the parties or further order, if the Debtor is required to issue service of process or otherwise compel production pursuant to the Hague Convention and a Letter of Request,

(2) directing David Bell ("Bell"), 50% owner, sole Director, and the Secretary of LAMUK, to appear for oral examination under oath at the above-referenced date, time, and location (the "Examination"), provided that the Examination date, time, and location may be extended amended by agreement of the parties or further order, if the Debtor is required to issue service of process or otherwise compel attendance at the Examination pursuant to the Hague Convention and a Letter of Request,

---

[1] The relevant section of the Hague Convention is attached hereto as **Appendix "A."**

(3) issuing a Letter of Request to the Central Authority (as defined in the in the Hague Convention),[2] in substantially the form attached hereto as **Exhibit "2,"** to aid in compelling the Document Production and Examination.

**PLEASE TAKE FURTHER NOTICE** that the bases for the Motion are set forth in detail in the attached Memorandum of Points and Authorities (the "Memorandum") and declarations (the "Declarations") in support thereof.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to LBR 2004-1, the Court may grant this Motion without a hearing and on an *ex parte* basis.  Upon the entry of a Court order granting this Motion, the Debtor may issue and serve subpoenas or other process to the extent allowed under applicable law and/or required by the Hague Convention, including the issuance and conveyance of a Letter of Request to the Central Authority designated by the UK, compelling the Document Production and Examination requested herein.  As discussed in the Memorandum, pursuant to the LBR 2004-1, the Debtor made reasonable attempts to satisfy the meet and confer requirements in advance of filing this Motion, but (1) LAMUK responded that it would not provide any of the requested Documents, made no effort to come to agreement on the scope of Documents to be produced, and made no effort to arrange for any examination of Bell, and (2) counsel for Bell has engaged in gamesmanship and in regard to the capacity in which it represents Bell, made no effort to come to agreement on the scope of Documents to be produced, and made no effort to arrange for any examination of Bell

**PLEASE TAKE FURTHER NOTICE** that, pursuant to LBR 2004-1(f), if grounds exist under FRBP 7026 and Rule 26(c) of the Federal Rules of Civil Procedure, LAMUK and/or Bell may object to the Document Production and/or Examination by filing a motion for protective order with the Clerk of the Bankruptcy Court and serving such motion on counsel to the Debtor, whose names and addresses appear at the top, left-hand corner of the first page of this Notice.

---

[2] The contact information for the Central Authority designated by the UK is attached hereto as **Appendix "B."**

**PLEASE TAKE FURTHER NOTICE** that, pursuant to LBR 2004-1(f), a motion for a protective order must be filed and served not less than 14 days before the date of the Document Production or Examination, as applicable, and set for hearing not less than 2 days before the scheduled Document Production or Examination, as applicable,  unless an order setting hearing on shortened notice is granted by the court pursuant to LBR 9075-1. The parties may stipulate, or the court may order, that the Document Production and/or Examination be postponed so that the motion for protective order can be heard on regular notice under LBR 9013-1(d).

**WHEREFORE**, the Debtor respectfully request that the Court enter an order:

(1)     Granting the Motion;

(2)     Directing LAMUK to produce the Documents listed in **Exhibit "1"** hereto by no later than April 17, 2026, at 10:00 a.m. (PST), at the offices of Levene, Neale, Bender, Yoo & Golubchik L.L.P., located at 2818 La Cienega Avenue, Los Angeles, California 90034, or via email to the Debtor's bankruptcy counsel, David Golubchik (DBG@LNBYG.COM), Carmela T. Pagay (CTP@LNBYG.COM), and Todd M. Arnold (TMA@LNBYG.COM), provided that the Document Production date, time, and location may be extended or otherwise amended by agreement of the parties or further order, if the Debtor is required to issue service of process or otherwise compel production pursuant to the Hague Convention and a Letter of Request;

(3)     Directing Bell to appear for Examination on May 1, 2026, at 6:00 a.m. (PST)/2:00 p.m. (Local UK Time), via Zoom or other teleconferencing service, provided that the Examination date, time, and location may be extended amended by agreement of the parties or further order, if the Debtor is required to issue service of process or otherwise compel attendance at the Examination pursuant to the Hague Convention and a Letter of Request;

(4)     Issuing a Letter of Request in substantially the form attached hereto as **Exhibit "2,"** to aid in compelling the Document Production and Examination; and

/ / /

/ / /

/ / /

/ / /

4

1        (5)      Granting such other and further relief as the Court deems just and proper.

2

3    Dated:  February 17, 2026        LEVENE, NEALE, BENDER, YOO
          & GOLUBCHIK L.L.P.

4

5            By:___/s/ *Todd M. Arnold*_____
         DAVID GOLUBCHIK

6             CARMELA T. PAGAY
         TODD M. ARNOLD

7            Attorneys for Debtor and Debtor in Possession

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES.................................................................. 9

I. INTRODUCTION.......................................................................................................................... 9

II. STATEMENT OF FACTS ......................................................................................................... 10

      A.     GENERAL BACKGROUND. .............................................................................10

      B.     THE RELATIONSHIPS AMONG THE DEBTOR, FRENKEL,
            LAMUK, AND BELL..........................................................................................10

      C.     THE DEBTOR'S SCHEDULES OF ASSETS, INCLUDING HIS
            PRINCIPAL ASSETS RELATED TO HIS INTEREST IN LAMUK
            AND AMOUNTS OWED TO HIM BY LAMUK, EFFORTS TO GET
            DOCUMENTS AND INFORMATION FROM LAMUK AND BELL
            RELATED TO SUCH PRINCIPAL ASSETS, AND MEET AND
            CONFER EFFORTS. ...........................................................................................14

III. THE MOTION SHOULD BE GRANTED .............................................................................. 18

      A.     THE DEBTOR IS ENTITLED TO THE DOCUMENT PRODUCTION
            AND EXAMINATION OF BELL............................................................................18

      B.     THE DEBTOR COURT SHOULD ISSUE A LETTER OF REQUEST
            TO COMPEL THE DOCUMENT PRODUCTION AND
            EXAMINATION OF BELL...................................................................................19

IV. CONCLUSION ........................................................................................................................ 24

DECLARATION OF ARKADIY LYAMPERT........................................................................... 26

DECLARATION OF TODD M. ARNOLD, ESQ........................................................................ 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asis Internet Servs. v. Optin Global, Inc.*,
   No. C–05–05124 JCS, 2007 WL 1880369 (N.D. Cal. June 29, 2007)...................................19

*Fisher & Paykel Healthcare Ltd. v. Flexicare Inc.*,
   No. SA CV 19- 00835-JVS, 2020 WL 5900155 (C.D. Cal. Aug. 17, 2020) .........................20

*SEC v. Leslie*,
   No. C 07–03444 JF (PVT), 2009 WL 688836 (N.D.Cal. Mar. 16, 2009)..............................20

*Societe Nationale Industrielle Aerospastiale v. U.S. Dist. Ct. for the S. Dist. Of
   Iowa*,
   482 U.S. 522 (1987) .........................................................................................................19

*In re Subpoena Duces Tecum*,
   461 B.R. 823 (Bankr. C.D. Cal. 2011) .............................................................................18

**Statutes**

11 U.S.C. § 101 et seq. Chapter 11 ........................................................................*passim*

Bankruptcy Code Section 1102 ...................................................................................9

Bankruptcy Code Sections 1107 and 1108................................................................9

Instead, SA Law ........................................................................................................21

LNBYG and SA Law ..........................................................................................*passim*

On January 5, 2026, SA Law............................................................................15, 31

On January 19, 2026, SA Law..........................................................................15, 31

SA Law Email Exchange, Second SA Law..............................................................21

SA Second Law .................................................................................................16, 32

Second SA Law ............................................................................................*passim*

Third SA Law ...................................................................................................17, 33

Waller Email Exchange, the GSBB Letter, and the Third SA Law ..............................21

**Other Authorities**

Bell. In the GSBB Letter, GSBB (a) ................................................................ 16, 32

Fed. R. Bankr. P. 2002(a), (2) .......................................................................... 20

Fed. R. Bankr. P. 2002(c) ................................................................................. 20

Fed. R. Bankr. P. 2004(a) ................................................................................. 18

Fed. R. Bankr. P. 2004(c) ................................................................................. 19

Fed. R. Bankr. P. 7028 ..................................................................................... 19

Fed. R. Civ. P. 28(b)(1)(B) .............................................................................. 19

of the Letter of Request (b) .............................................................................. 16, 32

Notably, in the GSBB Letter (a) ....................................................................... 17, 33

Rule 26 .............................................................................................................. 20

Rule 2004 .................................................................................................. *passim*

Rule 2004(b) ..................................................................................................... 18

Rule 2004, Rule 2004 ....................................................................................... 18\

### MEMORANDUM OF POINTS AND AUTHORITIES[3]

### I.

### INTRODUCTION

As discussed below, the Debtor owns a 50% interest in LAMUK and has other amounts owed to him by LAMUK. Those assets are by far the largest assets in the Debtor's bankruptcy estate and have an estimated value well in excess of $9 million. Given the foregoing, immediately after the bankruptcy case was filed, the Debtor's bankruptcy counsel, Levene, Neale, Bender, Yoo & Golubchik L.L.P. ("LNBYG"), made requests to the representatives of LAMUK and Bell, a 50% owner, sole Director, and the Secretary of LAMUK, for the Documents listed in **Exhibit "1"** hereto, which relate to the Debtor's interest in LAMUK and amounts payable to the Debtor by LAMUK. LNBYG also formally requested a meet and confer pursuant to LBR 2004-1 regarding the Document Production and Examination.

Representatives of LAMUK and Bell did not provide a meaningful timely response to LNBYG's requests. Instead, in their responses, which are discussed in detail below, they made it clear that they intended to stonewall all efforts to obtain any information about the Debtor's 50% ownership interest in LAMUK and amounts owed to him by LAMUK. Therefore, the Debtor is filing the instant Motion to compel the Document Production by LAMUK and the Examination of Bell. The Debtor remains hopeful that, after the filing of this Motion and the entry of an order hereon, the parties will be able to arrange for the Document Production and Examination on a consensual basis. In the event that is not the case, the Debtor is requesting that the Court issue a Letter of Request in substantially the form attached hereto as **Exhibit "2"** to aid in compelling the Document Production and Examination.

Based on the foregoing, and for other reasons discussed below, the Motion should be granted.

---

[3] Capitalized terms not otherwise defined herein have the same meanings as in the preceding Notice of Motion and Motion.

**II.**

**STATEMENT OF FACTS**

A.    **GENERAL BACKGROUND.**

1.    On December 16, 2025 (the "Petition Date"), the Debtor filed a voluntary bankruptcy petition under Chapter 11 of 11 U.S.C. § 101 et seq. (the "Bankruptcy Code").

2.    No committee has been appointed under Section 1102 of the Bankruptcy Code.

3.    The Debtor continues to manage his financial affairs and administer his bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

B.    **THE RELATIONSHIPS AMONG THE DEBTOR, FRENKEL, LAMUK, AND BELL.**

4.    In or around 2001, the Debtor and Roman Frenkel ("Frenkel") founded LA Micro Group, Inc. ("Inc"), as 50/50 shareholders.  Inc was a California business focusing on resale of computer hardware.  In 2002-2003, Alex Gorban commenced providing sale services to Inc through his company, Design Creator Inc. ("DCI").

5.    Separate and apart from the above founding and operation of Inc, in 2004, the Debtor and Bell, a UK businessman, formed LAMUK to expand Inc's successful California operations into the UK and Europe.  The Debtor and Bell were the two directors of LAMUK, and one share of stock in LAMUK was issued to Bell.  In 2008-2009, the Debtor and Frenkel discussed the LAMUK entity and Frenkel declined to have any ownership or director interest in the entity.  As a result, at that time, a second share of stock in LAMUK was issued to the Debtor. Based on the foregoing, Bell held one share in LAMUK and the Debtor held one share in LAMUK. Inc and LAMUK conducted business together through which Inc generated revenue from LAMUK.  By virtue of his 50% interest in Inc, Frenkel received a financial benefit from operations with LAMUK.

6.    In February 2010, without notice to the Debtor, as 50% owner of Inc, Frenkel unilaterally commenced dissolution of Inc and formed a competing business (IT Creations, Inc.) with Alex Gorban of DCI.  Together, they solicited Inc's employees, customers, vendors, and suppliers, and commenced litigation against the Debtor and Inc in California seeking dissolution

of Inc. DCI also filed a separate lawsuit alleging unpaid compensation. The Frenkel and DCI actions were later consolidated (the "<u>First Action</u>").  In 2012, Inc was dissolved pursuant to a court order.  In 2017, a judgment was entered in the First Action against Inc. and the Debtor in the approximately amount of $2.26 million (the "<u>California Judgment</u>").  Following entry of the judgment, the Debtor explored potential avenues to address the obligation, including the possibility of monetizing his interest in LAMUK, subject to applicable court approvals and restrictions.

7.    In or around 2006, the Debtor's family sold their home in Tarzana, which was in the name of two family trusts, and used the trust proceeds to purchase a replacement home in Calabasas.  In 2016, the Debtor's family learned that title to the Calabasas home was in the Debtor's personal name, rather than the intended trusts, which funded the purchase.  To remedy the situation, in 2016, the title was corrected to the trusts.  Prior to the California Judgment, Frenkel commenced a fraudulent conveyance lawsuit against the Debtor and certain third parties to avoid the alleged fraudulent conveyance and, in connection therewith, obtained a preliminary injunction which, among other things, prevented the Debtor from selling his interest in LAMUK to satisfy any obligation to Frenkel.  A $250,000 bond has been posted by Frenkel.

8.    Separate and apart from the foregoing, in 2015, Frenkel commenced a new lawsuit against the Debtor, Bell and LAMUK, in the UK, claiming a 25.5% interest in LAMUK.  After a full trial in 2017, Frankel's claims were rejected and, among other things, the Debtor was awarded costs against Frenkel.

9.    In 2017, Frenkel initiated a second proceeding in the UK seeking an injunction over the Debtor's LAMUK share, notwithstanding that a preliminary injunction was already in place against the Debtor in the fraudulent conveyance action, requiring the Debtor to spend additional fees and resources to respond and defend.  As with the prior action, Frenkel's claim was rejected and the Debtor was awarded additional costs against Frenkel.

10.    During 2017–2018, the Debtor made multiple efforts to resolve the disputes between the parties, including proposing arrangements that would have addressed a portion of the California Judgment.  Those efforts did not result in a resolution, and the litigation continued.

11.    In 2018, the Debtor entered into an agreement with Bell of LAMUK pursuant to which the Debtor would sell to LAMUK his 50% interest in LAMUK for £1.9 million, which funds would be used to pay the California Judgment.  This agreement is referred to as the Santa Monica Agreement ("SMA").  The SMA was subject to approval by the California state court in the fraudulent conveyance action.  In furtherance of the foregoing, in November 2019, Bell filed a motion in the California fraudulent conveyance action seeking to modify the injunction to allow the Debtor's sale of his 50% interest in LAMUK.  The sale proceeds, combined with UK cost awards owed to the Debtor, would have fully satisfied the California Judgment.  Frenkel and DCI opposed the motion, asserting that the Debtor's LAMUK equity belonged to Inc (the dissolved entity) and submitted their own valuation of the stock, which valued it at £7 - £13 million.  In addition, Frenkel and DCI filed separate additional actions against the Debtor, asserting that the Debtor's shares of LAMUK were fraudulently conveyed to the Debtor from Inc.  As a result of the foregoing litigation, the state court denied the approval of the SMA.

12.    In 2020, Bell and LAMUK filed declaratory proceedings in the UK against Frenkel, Inc, and the Debtor to resolve ownership of LAMUK, asserting that Bell and the Debtor are the only 50/50 shareholders of LAMUK.  In 2021, the UK court ruled that Bell and the Debtor are the sole 50/50 shareholders of LAMUK and that Inc has no ownership interest therein, thereby resolving this disputed issue.  Frenkel and Inc (funded by Frenkel) pursued multiple appeals. In 2024, the UK Supreme Court issued a final ruling affirming that the Debtor is the lawful 50% shareholder of LAMUK.

13.    Additionally, in 2021 and 2022, the UK courts issued additional cost orders in the Debtor's favor against Frenkel, with statutory interest.  Frenkel requested and was allowed by the UK court to offset the 2021 and 2022 UK judgments against the California Judgment.

14.    Frenkel and DCI renewed the California Judgment in May 2024, causing substantial additional interest to accrue.

15.    In 2024, the Debtor obtained an order from the UK courts for the costs assessment of two 2017 UK cost orders against Frenkel in the amount of approximately £659,000 plus statutory interest. Frenkel sought to offset those amounts against the California Judgment and

initiated proceedings in the UK to domesticate the renewed California Judgment. By UK Court Order dated January 16, 2026, he was permitted to domesticate a portion of the renewed judgment in the amount of approximately £345,000.

16.    The DCI and fraudulent conveyance actions were placed on hold in California pending the UK declaratory ruling. It was expected that all parties would comply with the UK decision. However, after the UK Supreme Court affirmed the Debtor's ownership interest in LAMUK, Frenkel and DCI opposed recognition of that ruling in California.

17.    Taking a different approach to the situation, in 2025, Frenkel and DCI entered into an agreement with Bell, now supporting enforcement of the previously-denied SMA. Thereafter, Frenkel filed several motions in 2025 seeking to modify the injunction to allow the SMA to proceed at £1.9 million, while simultaneously asserting that the Debtor owes him more than $3.8 million under the renewed California Judgment.  That dispute is still pending.

18.    Separate and apart from the litigation with Frenkel, LAMUK continues to be a successful company, generating substantial profits.  However, since 2018, LAMUK has not paid any dividends to the Debtor. Additionally, in 2019, Bell caused LAMUK to stop paying the Debtor's monthly compensation.  In 2022, Bell unlawfully and unilaterally removed the Debtor as a director of LAMUK.  As a result, in July 2025, the Debtor filed an Unfair Prejudice petition in the UK to recover his compensation and to enforce the sale of the Debtor's LAMUK share at a fair value.  This litigation is currently pending in the UK.

19.    Since 2018, LAMUK has not distributed dividends to the Debtor, and in 2019 his monthly compensation from LAMUK ceased.  As a result, the Debtor's available liquidity has been limited. Notwithstanding these circumstances, the Debtor remains a 50% shareholder of LAMUK, which continues to operate as a profitable business with substantial underlying value.

20.    Based on the foregoing circumstances and the ongoing multi-jurisdictional disputes, the Debtor determined that the commencement of this Chapter 11 case was an appropriate step to preserve and administer assets for the benefit of creditors under court supervision.

**C.**     **THE DEBTOR'S SCHEDULES OF ASSETS, INCLUDING HIS PRINCIPAL ASSETS RELATED TO HIS INTEREST IN LAMUK AND AMOUNTS OWED TO HIM BY LAMUK, EFFORTS TO GET DOCUMENTS AND INFORMATION FROM LAMUK AND BELL RELATED TO SUCH PRINCIPAL ASSETS, AND MEET AND CONFER EFFORTS.**

21.     On December 30, 2025, the Debtor filed his Schedules of Assets and Liabilities (the "Schedules") [Dkt. 16].

22.     In his Schedules, the Debtor listed $10.511 million in assets, which assets included, but were not limited to the following:

| ASSET | VALUE |
|---|---|
| 50% Interest in LAMUK | $9,000,000 |
| UK Costs Orders Against Frenkel | $1,500,000 |
| Unpaid Compensation from LAMUK | Listed as "Unknown" but the Schedules state that "company refuses to provide accounting to ascertain amount owed but Debtor believes that the amount is in excess of $300,000." |
| Unpaid Dividends from LAMUK | Listed as "Unknown" but the Schedules state that "from 2018 to the present. Accounting has not been provided to ascertain amounts due, but Debtor estimates that such amounts are in excess of $3.5 million." |

23.     Given that, as set forth in the Debtor's Schedules, (a) the Debtor's 50% interest in LAMUK and amounts owed to him by LAMUK are by far his largest assets, but (b) he needs additional documents and information to value and realize upon such assets, soon after the Petition Date, LNBYG, on behalf of the Debtor, reached out to representatives for LAMUK and Bell to request such documents and information and to have a meet and confer regarding any Rule 2004 motion necessary to obtain such documents and information.

24.     More specifically, on December 27, 2025, LNBYG emailed Simon Walsh and others at SA Law LLP ("SA Law"), a UK law firm, that LNBYG understood represented

LAMUK and/or Bell, and (a) requested the production of certain documents, which are the nearly identical to the Documents the Debtor is seeking pursuant to this Motion and listed in **Exhibit "1"** hereto and (b) advised SA Law that if the Debtor did not receive the requested Documents by January 8, 2026, then the Debtor would file appropriate documents with this Court to compel production of the Documents. *See* email exchange between LNBYG and SA Law attached hereto as **Exhibit "3"** (the "SA Law Email Exchange") (note that Items 8 and 9 include requests for Documents from Bell).

25.     On January 5, 2026, SA Law advised LNBYG that it was awaiting instructions and would reply thereafter. *See* SA Law Email Exchange.

26.     On January 5, 2026, LNBYG acknowledged the response from SA Law and noted that the Debtor preferred to resolve the request for Documents consensually. *See* SA Law Email Exchange.

27.     On January 13, 2026, after not hearing back from SA Law, LNBYG sent a further email to SA Law, (a) inquiring about the status of agreement to produce the Documents, (b) seeking dates to conduct an oral examination of Bell, and (c) advising SA Law that the current email served as a formal request for a meet and confer pursuant to LBR 2004-1 in advance of filing a Rule 2004 motion, and (d) advising that if the Debtor did not receive a response by January 16, 2026, then the Debtor would file appropriate documents with this Court to compel production of the Documents and an  oral examination of Bell. *See* second email exchange between LNBYG and SA Law attached hereto as **Exhibit "4"** (the "Second SA Law Email Exchange").

28.     On January 19, 2026, SA Law sent an email responding to LNBYG's emails in which SA Law, (a) asserted that it only represented Bell as a shareholder of LAMUK, (b) asserted that Bell, in his capacity as shareholder, could not produce the financial documents requested by the Debtor (which the Debtor asserts is a semantic game of hide the ball since Bell is also the sole

Director and Secretary of LAMUK),[4] (c) did not respond to the direct request for dates and times to conduct an oral examination of its client, Bell, and (d) indicated that LNBYG should direct its document requests to LAMUK (again, despite that Bell is the sole Director and Secretary of LAMUK), but did not provide LNBYG with contact information for LAMUK that LNBYG could use to direct its document requests. *See* Second SA Law Email Exchange.

29.    On January 20, 2026, in response to LNBYG's request for contact information for LAMUK that LNBYG could use to direct its document requests, SA Law sent an email to LNBYG indicating that LNBYG should email Lee Waller ("Waller") at LAMUK. *See* SA Second Law Email Exchange.

30.    On January 20, 2026, LNBYG emailed Waller at LAMUK and (a) requested the production of certain documents, which are the same Documents the Debtor is seeking pursuant to this Motion and listed in **Exhibit "1"** hereto, (b) requested an oral examination of LAMUK's representative (which the Debtor believes would be Bell) within two weeks after the receipt of the Documents, and (c) advised Waller that if the Debtor did not receive the requested Documents and a response regarding the oral examination of LAMUK's representative by January 26, 2026, then the Debtor would file appropriate documents with this Court to compel production of the Documents and the oral examination of LAMUK's representative. *See* email exchange between LNBYG and Waller attached hereto as **Exhibit "6"** (the "Waller Email Exchange").

31.    On January 22, 2026, Waller sent an email to LNBYG advising LNBYG that, (a) LAMUK acknowledged the receipt of the above January 20, 2026 email from LNBYG, and (b) LAMUK would seek bankruptcy counsel in the United States. *See* Waller Email Exchange.

---

[4] Attached hereto as **Exhibit "5"** are true and correct copies of documents (the "Companies House Documents") LNBYG obtained online from Companies House, which is essentially the UK equivalent of a Secretary of State regarding corporate filings and information. The Companies House Documents show that (1) Bell is the sole Director and the Secretary of LAMUK, (2) Bell's registered correspondence address is 2 Fisher House, Hillside Park, Sunningdale, Ascot, England, SL5 9RP, (3) Temple Secretaries Limited is LAMUK's "Nominee Secretary, (4) Temple Secretaries Limited's registered correspondence address is 788-790 Finchley Road, London, England NW11 7TJ, *(5) the Debtor owns more than 25% but not more than 50% of LAMUK, (6) Bell owns more than 25% but not more than 50% of LAMUK*, and (7) LAMUK's registered office address is Astro House Astro House, Unit 2 Brants Bridge, Bracknell, Berkshire, England, RG12 9BG.

32.    On January 28, 2026, Gary F. Seitz of Gellert Seitz Busenkell & Brown, LLC ("GSBB") sent a letter (the "GSBB Letter") responding to LNBYG's request for the Document Production and Examination of Bell.  In the GSBB Letter, GSBB (a) asserts a lack of jurisdiction over LAMUK and Bell as a basis for not responding to the request for the Document Production and for an Examination of Bell, which will be eliminated by issuance of the Letter of Request sought herein and supports the issuance of the Letter of Request, (b) asserts a number of "substantive objections" to the request for the Document Production, including that (i) the requested Documents have no relevance to the Debtor's bankruptcy estate, which is wholly contradicted by the fact that, as discussed above, the Debtor's 50% interest in LAMUK and amounts owed to him by LAMUK are the largest assets of the Debtor's bankruptcy estate, (ii) certain requested Documents relate to proprietary or otherwise protected information, but with no suggestion for the form of a Non-Disclosure Agreement or protective order to address such concern, and (iii) argues that the Debtor's 50% ownership interest in LAMUK is subject to dispute despite that LAMUK's own documents on file with Companies House show that LAMUK itself admits that the Debtor owns equity in LAMUK.[5]  *See* GSBB Letter, a true and correct copy of which is attached hereto as **Exhibit "7."**

33.    Notably, in the GSBB Letter, (a) GSBB does not suggest any further meet and confer regarding the Document Production and the scope, timing, or any protections related thereto and instead essentially indicates that LAMUK will not produce any of the Documents and (b) GSBB does not even mention Bell or the request for an Examination of Bell in his capacity as the 50% owner, sole Director, and the Secretary of LAMUK.

34.    On January 29, 2026, after being directed to Waller regarding the requested Document Production and examination of Bell as the representative of LAMUK, LNBYG sent a further email to SA Law, again requesting a meet and confer to arrange for agreement regarding the production of the Documents by Bell and the examination of Bell in his capacity as an

---

[5] *See* n. 4, *supra*.

17

individual, a shareholder of LAMUK, or otherwise.  *See* third email exchange between LNBYG

and SA Law attached hereto as **Exhibit "8"** (the "Third SA Law Email Exchange").

35.    In response to the foregoing and as a clear indication that Bell intends to evade any

efforts to examine him under oath, on January 30, 2026, after responding to emails from LNBYG

regarding the Document Production and Examination of Bell in connection with this bankruptcy

case and affirmatively stating that SA Law "act[s] for Mr Bell in his capacity as a shareholder [of

LAMUK],"[6] SA Law sent an email to LNBYG asserting that SA Law "does not act for Mr Bell in

relation to Mr Lyampert's Chapter 11 proceedings." *See* Second SA Law Email Exchange.

**III**.

**THE MOTION SHOULD BE GRANTED**

A.    **THE DEBTOR IS ENTITLED TO THE DOCUMENT PRODUCTION AND
EXAMINATION OF BELL.**

Rule 2004 provides that, [o]n a party in interest's motion, the court may order the

examination of any entity."  Fed. R. Bankr. P. 2004(a).  The permissible scope of a Rule 2004

examination is very broad and is set forth in Rule 2004(b), which provides, in relevant part:

> The examination...may relate only to (A) the debtor's acts, conduct,
> or property; (B) the debtor's liabilities and financial condition; [and]
> (C) any matter that may affect the administration of the debtor's
> estate.

Fed. R. Bankr. P. 2004(b).  Since the scope of examination under Rule 2004 extends to "any

matter which may affect administration of the debtor's estate," the inquiry permitted under Rule

2004 is broad.  Indeed, "[t]he scope of a 2004 examination is unfettered and broad and is akin to a

fishing expedition."  *In re Subpoena Duces Tecum*, 461 B.R. 823, 829 (Bankr. C.D. Cal. 2011)

(cites and quotes omitted).

As discussed above and as can be seen from the Documents listed in **Exhibit "1"** hereto

that the Debtor is seeking pursuant to this Motion, the Documents relate to the primary assets of

the Debtor's bankruptcy estate – *i.e.*, the estate's (1) 50% interest in LAMUK, (2) interest in UK

---

[6] *See* Second SA Law Email Exchange.

18

Costs orders against Frenkel, (3) the estate's interest in compensation owed by LAMUK to the Debtor, and (4) the estate's interest in dividends owed by LAMUK to the Debtor.  Similarly, the requested Examination of Bell will relate to the Documents and the subject matter thereof, as well as the acts, conduct, assets, liabilities and financial condition of the LAMUK as it affects the assets of the Debtor and his estate and generally to matters that may affect the administration of the Debtor's estate.    Based on the foregoing, the requested Document Production and Examination are within the scope of Rule 2004.

**B.**    <u>**THE DEBTOR COURT SHOULD ISSUE A LETTER OF REQUEST TO COMPEL THE DOCUMENT PRODUCTION AND EXAMINATION OF BELL**</u> .

In regard to compelling the production of documents and attendance at examinations under oath pursuant to Rule 2004, Rule 2004 provides, as follows:

> Regardless of the district where the examination will be conducted, an entity may be compelled under Rule 9016 to attend and produce documents or electronically stored information. An attorney may issue and sign a subpoena on behalf of the court where the case is pending if the attorney is admitted to practice in that court.

Fed. R. Bankr. P. 2004(c).

Here, compelling the Document Production and Examination of Bell likely cannot be compelled by a subpoena, because LAMUK is a UK entity and Bell is a UK citizen.  However, the Document Production and Examination of Bell can be compelled pursuant to the Hague Convention and the issuance of a Letter of Request thereunder, and the issuance of a Letter of Request would be consistent with Rule 2004(c) and other applicable provisions of the Federal Rules of Bankruptcy Procedure, and Federal Rules of Civil Procedure .

The United States and the UK are signatories to the Hague Convention, which "prescribes the procedures by which a judicial authority in one contracting state may request evidence located in another." *Societe Nationale Industrielle Aerospastiale v. U.S. Dist. Ct. for the S. Dist. Of Iowa*, 482 U.S. 522, 524 (1987).  Its "procedures are available whenever they will facilitate the gathering of evidence by the means authorized in the [Hague] Convention." *Id.* at 541.

More specifically, the Hague Convention provides that, "In in civil or commercial matters a judicial authority of a contracting State may, in accordance with the provisions of the law of that State, request the competent authority of another Contracting State, by means of a Letter of Request, to obtain evidence, or to perform some other judicial act." Hague Convention, Art. 1.

Letters of Request are written requests that are sent by a court in which an action is pending to a foreign court seeking discovery from a witness within the foreign court's jurisdiction. *Asis Internet Servs. v. Optin Global, Inc.*, No. C–05–05124 JCS, 2007 WL 1880369, at *3 (N.D. Cal. June 29, 2007). Letters of Request may include, among other things, requests for production of documents or for depositions to be taken in a foreign country. *See* Fed. R. Civ. P. 28(b)(1)(B) (made applicable pursuant to Fed. R. Bankr. P. 7028) (stating depositions may be taken abroad "under a letter of request (whether or not captioned a 'letter rogatory'"). Courts have inherent authority to issue Letters of Request, *SEC v. Leslie*, No. C 07–03444 JF (PVT), 2009 WL 688836, at *2 (N.D.Cal. Mar. 16, 2009), and Letters of Request should be liberally used. *See Fisher & Paykel Healthcare Ltd. v. Flexicare Inc.*, No. SA CV 19- 00835-JVS (DFMx), 2020 WL 5900155, at * 2 (C.D. Cal. Aug. 17, 2020) (internal citation omitted) ("discovery by letters rogatory is consistent with the liberal discovery provisions of Rule 26). A party opposing the issuance of letters rogatory or request must show "good reason for a court to deny an application for a letter [of request]." *Leslie*, 2009 WL 688836 at *2.

Here, the Court should issue a Letter of Request in substantially the form attached hereto as **Exhibit "2,"** because, (1) it is consistent with Fed. R. Bankr. P. 2002(c) (regarding means of compelling the production of documents and attendance at examinations under oath pursuant to Fed. R. Bankr. P. 2002(a), (2) it is consistent  with Fed. R. Civ. P. 26 (liberal discovery) and 28 (examinations of, and document productions from, residents of a foreign country), and (3) as discussed hereinabove, Bell and LAMUK (and the representatives thereof) have made it clear that they intend to assert jurisdiction as a basis to avoid the Document Production and Examination of Bell and to otherwise engage in efforts to evade and thwart efforts to obtain the Document Production and Examination of Bell.

Issuance of the Letter of Request in substantially the form attached hereto as **Exhibit "2"** is also appropriate because if conforms to the requirements of the Hague Convention regarding the contents of a Letter of Request. *See* Hague Convention, at Art. 3. Specifically, the proposed Letter of Request specifies: (1) the authority requesting the Letter of Request and the authority requested to execute it, (2) the names and addresses of the parties to this proceeding relevant to the Document Production and Examination of Bell and their representatives, (3) the nature of the proceedings for which the evidence is required, (4) the evidence to be obtained or other judicial act to be performed, (5) the names and address of the persons to be examined or to produce documents, (6) a statement of the subject-matter of the Bell Examination, and (7) the Documents to be produced. *See* Hague Convention, at Art. 3.

## II. THE DEBTOR COMPLIED WITH THE REQUIREMENTS OF LBR 2004-1.

### 1.    THE MEET AND CONFER REQUIREMENT.

LBR 2004-1 provides, in pertinent part, as follows:

> Prior to filing a motion for examination or for production of documents under FRBP 2004, the moving party must attempt to confer (in person or telephonically) with the entity to be examined, or its counsel, to arrange for a mutually agreeable date, time, place, and scope of an examination or production.
> …
> The motion must include a declaration of counsel stating whether the required conference was held and the efforts made to obtain an agreeable date, time, place, and scope of an examination or production.

LBR 2004-1(a) and (b).

As discussed above in paragraph II.C and demonstrated by the SA Law Email Exchange, Second SA Law Email Exchange, the Waller Email Exchange, the GSBB Letter, and the Third SA Law Email Exchange, the Debtor's counsel, LNBYG, made more than reasonable efforts to meet and confer with (1) Bell (who owns 50% of the Debtor and is the sole Director and Secretary of LAMUK), (2) SA Law (counsel for Bell at least in his capacity as a shareholder of LAMUK), (3) Waller (the representative of LAMUK that LNBYG was directed to contact

regarding the Document Request and Examination), and (4) GSBB (counsel for LAMUK).

As also discussed above, in response to LNBYG's efforts, SA Law and GSBB have not engaged or sought to engage with LNBYG in a meaningful way to arrange for agreement on the scope and timing of the Document Production and Examination of Bell, or any protections related thereto in the form of any required non-disclosure agreement, protective order or the like. Instead, SA Law and GSBB have made it clear that they intend to resist and evade any efforts to obtain the Documents or an Examination of Bell.

**2.    THE CONTACT INFORMATION FOR THE EXAMINEES.**

LBR 2004-1 provides that a Rule 2004 motion must state "the name, place of residence, and the place of employment of the entity to be examined, if known."  LBR 2004-1 (b).  The contact information for LAMUK and Bell, which was obtained from Companies house (*see* fn. 2, *supra*), the Waller Email Exchange, and the GSBB Letter, is as follows:

> **LAMUK:**
> Astro House Astro House, Unit 2
> Attn: Lee Waller
> Attn: Dave Bell
> Bracknell
> Berkshire, England, RG12 9BG
> Email: lee.waller@lamicro.co.uk
>
> **LAMUK's Nominee Secretary**
> Temple Secretaries Limited
> 788-790 Finchley Road
> London, England NW11 7TJ
>
> **LAMUK Counsel**
> Gellert Seitz Busenkell & Brown, LLC
> Attn: Gary F. Seitz
> 1201 N. Orange Street, Suite 300
> Wilmington, DE 19801
> Email: gseitz@gsbblaw.com
>
> **Bell**
> 2 Fisher House
> Hillside Park
> Sunningdale
> Ascot, England, SL5 9RP

**Bell Counsel**
SA Law, LLP
Attn: Simon Walsh, Partner
Gladstone Place, 36 38
Upper Marlborough Road
St Albans
Hertfordshire, England AL1 3UU
Email: simon.walsh@salaw.com

*This Motion was served on all of the foregoing parties by overnight for addresses in the U.S., express mail offering service in the UK within one to three business days for addresses in the UK, and by email at the above-refenced email addresses.*

## 3.   THE EXAMINATION CANNOT PROCEED UNDER FRBP 7030 OR 9014.

LBR 2004-1 provides that a Rule 2004 motion must "explain why the examination cannot proceed under FRBP 7030 or 9014." LBR 2004-1 (b). Here, the requested Document Production and Examination cannot proceed under FRBP 7030 or 9014 because there is no pending adversary or contested matter before the Court involving the Debtor, on one hand, and LAMUK and/or Bell, on the other hand, that relates to the information the Debtor is seeking to obtain pursuant to this Motion.

## 4.   THE DEBTORS PROVIDED THE REQUIRED AMOUNT OF NOTICE OF THE DOCUMENT PRODUCTION AND EXAMINATION TO THE APPROPRIATE PARTIES.

LBR 2004-1 provides, in pertinent part, as follows:

> The motion must be served on the debtor, debtor's attorney (if any), the trustee (if any), the United States trustee, and the entity to be examined. Not less than 21 days' notice of the examination must be provided, calculated from the date of service of the motion, unless otherwise ordered by the court.

LBR 2004-1(c).

Here, as can be seen from the proof of service annexed hereto, this Motion and supporting papers were served on the required parties. Further, this Motion and supporting

23

papers, which provide notice of the Document Production and Examination requested herein, were filed and served at least 21 days before the requested Document Production and Examination requested herein.

**IV.**

**CONCLUSION**

**WHEREFORE**, the Debtor respectfully request that the Court enter an order:

(1)    Granting the Motion;

(2)    Directing LAMUK to produce the Documents listed in **Exhibit "1"** hereto by no later than April 17, 2026, at 10:00 a.m. (PST), at the offices of Levene, Neale, Bender, Yoo & Golubchik L.L.P., located at 2818 La Cienega Avenue, Los Angeles, California 90034, or via email to the Debtor's bankruptcy counsel, David Golubchik (DBG@LNBYG.COM), Carmela T. Pagay (CTP@LNBYG.COM), and Todd M. Arnold (TMA@LNBYG.COM), provided that the Document Production date, time, and location may be extended or otherwise amended by agreement of the parties or further order, if the Debtor is required to issue service of process or otherwise compel production pursuant to the Hague Convention and a Letter of Request;

(3)    Directing Bell to appear for Examination on May 1, 2026, at 6:00 a.m. (PST)/2:00 p.m. (Local UK Time), via Zoom or other teleconferencing service, provided that the Examination date, time, and location may be extended amended by agreement of the parties or further order, if the Debtor is required to issue service of process or otherwise compel attendance at the Examination pursuant to the Hague Convention and a Letter of Request;

(4)    Issuing a Letter of Request in substantially the form attached hereto as **Exhibit "2,"** to aid in compelling the Document Production and Examination; and

(5)    Granting such other and further relief as the Court deems just and proper.

Dated:  February 17, 2026

LEVENE, NEALE, BENDER, YOO
& GOLUBCHIK L.L.P.

By:    /s/ *Todd M. Arnold*
DAVID GOLUBCHIK
CARMELA T. PAGAY
TODD M. ARNOLD

Attorneys for Debtor and Debtor in Possession

## DECLARATION OF ARKADIY LYAMPERT

I, ARKADIY LYAMPERT, hereby declare as follows:

1.      I am over 18 years of age.  Except where otherwise stated, I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.      I make this Declaration in support of the Motion to which this Declaration is attached.  Unless otherwise stated, all capitalized terms herein have the same meanings as in the Motion.

3.      On December 16, 2025 (the "Petition Date"), I filed a voluntary bankruptcy petition under Chapter 11.

4.      I am informed and believe that no committee has been appointed in my bankruptcy case.

5.      I continue to manage my financial affairs and administer my bankruptcy estate as a debtor in possession.

6.      In or around 2001, Roman Frenkel ("Frenkel") and I founded LA Micro Group, Inc. ("Inc"), as 50/50 shareholders.  Inc was a California business focusing on resale of computer hardware.  In 2002-2003, Alex Gorban commenced providing sale services to Inc through his company, Design Creator Inc. ("DCI").

7.      Separate and apart from the above founding and operation of Inc, in 2004, Bell, a UK businessman, and I formed LAMUK to expand Inc's successful California operations into the UK and Europe.  Bell and I were the two directors of LAMUK, and one share of stock in LAMUK was issued to Bell.  In 2008-2009, Frenkel and I discussed the LAMUK entity and Frenkel declined to have any ownership or director interest in the entity.  As a result, at that time, a second share of stock in LAMUK was issued to me.  Based on the foregoing, Bell held one share in LAMUK and I held one share in LAMUK. Inc and LAMUK conducted business together through which Inc generated revenue from LAMUK.  By virtue of his 50% interest in Inc, Frenkel received a financial benefit from operations with LAMUK.

8.     In February 2010, without notice to me, as 50% owner of Inc, Frenkel unilaterally commenced dissolution of Inc and formed a competing business (IT Creations, Inc.) with Alex Gorban of DCI.  Together, they solicited Inc's employees, customers, vendors, and suppliers, and commenced litigation against me and Inc in California seeking dissolution of Inc. DCI also filed a separate lawsuit alleging unpaid compensation. The Frenkel and DCI actions were later consolidated (the "First Action").  In 2012, Inc was dissolved pursuant to a court order.  In 2017, a judgment was entered in the First Action against Inc. and me in the approximately amount of $2.26 million (the "California Judgment").  Following entry of the judgment, I explored potential avenues to address the obligation, including the possibility of monetizing my interest in LAMUK, subject to applicable court approvals and restrictions.

9.     In or around 2006, my family sold our home in Tarzana, which was in the name of two family trusts, and used the trust proceeds to purchase a replacement home in Calabasas. In 2016, we learned that title to the Calabasas home was in my personal name, rather than the intended trusts, which funded the purchase.  To remedy the situation, in 2016, the title was corrected to the trusts.  Prior to the California Judgment, Frenkel commenced a fraudulent conveyance lawsuit against me and certain third parties to avoid the alleged fraudulent conveyance and, in connection therewith, obtained a preliminary injunction which, among other things, prevented me from selling my interest in LAMUK to satisfy any obligation to Frenkel.  A $250,000 bond has been posted by Frenkel.

10.     Separate and apart from the foregoing, in 2015, Frenkel commenced a new lawsuit against me, Bell and LAMUK, in the UK, claiming a 25.5% interest in LAMUK.  After a full trial in 2017, Frankel's claims were rejected and, among other things, I was awarded costs against Frenkel.

11.     In 2017, Frenkel initiated a second proceeding in the UK seeking an injunction over my LAMUK share, notwithstanding that a preliminary injunction was already in place against me in the fraudulent conveyance action, requiring me to spend additional fees and resources to respond and defend.  As with the prior action, Frenkel's claim was rejected and I was awarded additional costs against Frenkel.

12.     During 2017–2018, I made multiple efforts to resolve the disputes between the parties, including proposing arrangements that would have addressed a portion of the California Judgment. Those efforts did not result in a resolution, and the litigation continued.

13.     In 2018, I entered into an agreement with Bell of LAMUK pursuant to which I would sell to LAMUK my 50% interest in LAMUK for £1.9 million, which funds would be used to pay the California Judgment.  This agreement is referred to as the Santa Monica Agreement ("SMA").  The SMA was subject to approval by the California state court in the fraudulent conveyance action.  In furtherance of the foregoing, in November 2019, Bell filed a motion in the California fraudulent conveyance action seeking to modify the injunction to allow my sale of my 50% interest in LAMUK.  The sale proceeds, combined with UK cost awards owed to me, would have fully satisfied the California Judgment.  Frenkel and DCI opposed the motion, asserting that my LAMUK equity belonged to Inc (the dissolved entity) and submitted their own valuation of the stock, which valued it at £7 - £13 million.  In addition, Frenkel and DCI filed separate additional actions against me asserting that my shares of LAMUK were fraudulently conveyed to me from Inc.  As a result of the foregoing litigation, the state court denied the approval of the SMA.

14.     In 2020, Bell and LAMUK filed declaratory proceedings in the UK against Frenkel, Inc, and me to resolve ownership of LAMUK, asserting that Bell and I are the only 50/50 shareholders of LAMUK.  In 2021, the UK court ruled that Bell and I are the sole 50/50 shareholders of LAMUK and that Inc has no ownership interest therein, thereby resolving this disputed issue.  Frenkel and Inc (funded by Frenkel) pursued multiple appeals. In 2024, the UK Supreme Court issued a final ruling affirming that I am the lawful 50% shareholder of LAMUK.

15.     Additionally, in 2021 and 2022, the UK courts issued additional cost orders in my favor against Frenkel, with statutory interest.  Frenkel requested and was allowed by the UK court to offset the 2021 and 2022 UK judgments against the California Judgment.

16.     Frenkel and DCI renewed the California Judgment in May 2024, causing substantial additional interest to accrue.

17.    In 2024, I obtained an order from the UK courts for the costs assessment of two 2017 UK cost orders against Frenkel in the amount of approximately £659,000 plus statutory interest. Frenkel sought to offset those amounts against the California Judgment and initiated proceedings in the UK to domesticate the renewed California Judgment. By UK Court Order dated January 16, 2026, he was permitted to domesticate a portion of the renewed judgment in the amount of approximately £345,000.

18.    The DCI and fraudulent conveyance actions were placed on hold in California pending the UK declaratory ruling. It was expected that all parties would comply with the UK decision. However, after the UK Supreme Court affirmed my ownership interest in LAMUK, Frenkel and DCI opposed recognition of that ruling in California.

19.    Taking a different approach to the situation, in 2025, Frenkel and DCI entered into an agreement with Bell, now supporting enforcement of the previously-denied SMA. Thereafter, Frenkel filed several motions in 2025 seeking to modify the injunction to allow the SMA to proceed at £1.9 million, while simultaneously asserting that I owe him more than $3.8 million under the renewed California Judgment.  That dispute is still pending.

20.    Separate and apart from the litigation with Frenkel, LAMUK continues to be a successful company, generating substantial profits.  However, since 2018, LAMUK has not paid any dividends to me. Additionally, in 2019, Bell caused LAMUK to stop paying my monthly compensation.  In 2022, Bell unlawfully and unilaterally removed me as a director of LAMUK. As a result, in July 2025, I filed an Unfair Prejudice petition in the UK to recover my compensation and to enforce the sale of my LAMUK share at a fair value.  This litigation is currently pending in the UK.

21.    Since 2018, LAMUK has not distributed dividends to me, and in 2019 my monthly compensation from LAMUK ceased. As a result, my available liquidity has been limited. Notwithstanding these circumstances, I remain a 50% shareholder of LAMUK, which continues to operate as a profitable business with substantial underlying value.

22.     Based on the foregoing circumstances and the ongoing multi-jurisdictional disputes, I determined that the commencement of this Chapter 11 case was an appropriate step to preserve and administer assets for the benefit of creditors under court supervision.

23.     On December 30, 2025, I filed my Schedules of Assets and Liabilities (the "Schedules") [Dkt. 16].

24.     In my Schedules, I listed $10.511 million in assets, which assets included, but were not limited to the following:

| ASSET | VALUE |
|---|---|
| 50% Interest in LAMUK | $9,000,000 |
| UK Costs Orders Against Frenkel | $1,500,000 |
| Unpaid Compensation from LAMUK | Listed as "Unknown" but the Schedules state that "company refuses to provide accounting to ascertain amount owed but Debtor believes that the amount is in excess of $300,000." |
| Unpaid Dividends from LAMUK | Listed as "Unknown" but the Schedules state that "from 2018 to the present. Accounting has not been provided to ascertain amounts due, but Debtor estimates that such amounts are in excess of $3.5 million." |

I declare and verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 17th day of February 2026, at Los Angeles, California.

_____
ARKADIY LYAMPERT

## DECLARATION OF TODD M. ARNOLD, ESQ.

I, TODD M. ARNOLD, Esq., hereby declare as follows:

1.     I am over 18 years of age.  Except where otherwise stated, I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.     I make this Declaration in support of the Motion to which this Declaration is attached.  Unless otherwise stated, all capitalized terms herein have the same meanings as in the Motion.

3.     I am a partner of the law firm of Levene, Neale, Bender, Yoo & Golubchik L.L.P ("LNBYG"), bankruptcy counsel to the Debtor herein.

4.     Given that, as set forth in the Debtor's Schedules and in the declaration above, (a) the Debtor's 50% interest in LAMUK and amounts owed to him by LAMUK are by far his largest assets, but (b) he needs additional documents and information to value and realize upon such assets, soon after the Petition Date, LNBYG, on behalf of the Debtor, reached out to representatives for LAMUK and Bell to request such documents and information and to have a meet and confer regarding any Rule 2004 motion necessary to obtain such documents and information.

5.     More specifically, on December 27, 2025, LNBYG emailed Simon Walsh and others at SA Law LLP ("SA Law"), a UK law firm, that LNBYG understood represented LAMUK and/or Bell, and (a) requested the production of certain documents, which are the nearly identical to the Documents the Debtor is seeking pursuant to this Motion and listed in **Exhibit "1"** hereto and (b) advised SA Law that if the Debtor did not receive the requested Documents by January 8, 2026, then the Debtor would file appropriate documents with this Court to compel production of the Documents.  *See* email exchange between LNBYG and SA Law attached hereto as **Exhibit "3"** (the "SA Law Email Exchange") (note that Items 8 and 9 include requests for Documents from Bell).

6.      On January 5, 2026, SA Law advised LNBYG that it was awaiting instructions and would reply thereafter.  *See* SA Law Email Exchange.

7.      On January 5, 2026, LNBYG acknowledged the response from SA Law and noted that the Debtor preferred to resolve the request for Documents consensually.  *See* SA Law Email Exchange.

8.      On January 13, 2026, after not hearing back from SA Law, LNBYG sent a further email to SA Law, (a) inquiring about the status of agreement to produce the Documents, (b) seeking dates to conduct an oral examination of Bell, and (c) advising SA Law that the current email served as a formal request for a meet and confer pursuant to LBR 2004-1 in advance of filing a Rule 2004 motion, and (d) advising that if the Debtor did not receive a response by January 16, 2026, then the Debtor would file appropriate documents with this Court to compel production of the Documents and an  oral examination of Bell.  *See* second email exchange between LNBYG and SA Law attached hereto as **Exhibit "4"** (the "Second SA Law Email Exchange").

9.      On January 19, 2026, SA Law sent an email responding to LNBYG's emails in which SA Law, (a) asserted that it only represented Bell as a shareholder of LAMUK, (b) asserted that Bell, in his capacity as shareholder, could not produce the financial documents requested by the Debtor (which the Debtor asserts is a semantic game of hide the ball since Bell is also the sole Director and Secretary of LAMUK),[7] (c) did not respond to the direct request for dates and times to conduct an oral examination of its client, Bell, and (d) indicated that LNBYG should direct its document requests to LAMUK (again, despite that Bell is the sole Director and Secretary of

---

[7] Attached hereto as **Exhibit "5"** are true and correct copies of documents (the "Companies House Documents") I obtained online from Companies House, which is essentially the UK equivalent of a Secretary of State regarding corporate filings and information.  The Companies House Documents show that (1) Bell is the sole Director and the Secretary of LAMUK, (2) Bell's registered correspondence address is 2 Fisher House, Hillside Park, Sunningdale, Ascot, England, SL5 9RP, (3) Temple Secretaries Limited is LAMUK's "Nominee Secretary, (4) Temple Secretaries Limited's registered correspondence address is 788-790 Finchley Road, London, England NW11 7TJ, *(5) the Debtor owns more than 25% but not more than 50% of LAMUK, (6) Bell owns more than 25% but not more than 50% of LAMUK*, and (7) LAMUK's registered office address is Astro House Astro House, Unit 2 Brants Bridge, Bracknell, Berkshire, England, RG12 9BG.

LAMUK), but did not provide LNBYG with contact information for LAMUK that LNBYG could use to direct its document requests.  *See* Second SA Law Email Exchange.

10.     On January 20, 2026, in response to LNBYG's request for contact information for LAMUK that LNBYG could use to direct its document requests, SA Law sent an email to LNBYG indicating that LNBYG should email Lee Waller ("Waller") at LAMUK.  *See* SA Second Law Email Exchange.

11.     On January 20, 2026, LNBYG emailed Waller at LAMUK and (a) requested the production of certain documents, which are the same Documents the Debtor is seeking pursuant to this Motion and listed in **Exhibit "1"** hereto, (b) requested an oral examination of LAMUK's representative (which the Debtor believes would be Bell) within two weeks after the receipt of the Documents, and (c) advised Waller that if the Debtor did not receive the requested Documents and a response regarding the oral examination of LAMUK's representative by January 26, 2026, then the Debtor would file appropriate documents with this Court to compel production of the Documents and the oral examination of LAMUK's representative.  *See* email exchange between LNBYG and Waller attached hereto as **Exhibit "6"** (the "Waller Email Exchange").

12.     On January 22, 2026, Waller sent an email to LNBYG advising LNBYG that, (a) LAMUK acknowledged the receipt of the above January 20, 2026 email from LNBYG, and (b) LAMUK would seek bankruptcy counsel in the United States. *See* Waller Email Exchange.

13.     On January 28, 2026, Gary F. Seitz of Gellert Seitz Busenkell & Brown, LLC ("GSBB") sent a letter (the "GSBB Letter") responding to LNBYG's request for the Document Production and Examination of Bell.  In the GSBB Letter, GSBB (a) asserts a lack of jurisdiction over LAMUK and Bell as a basis for not responding to the request for the Document Production and for an Examination of Bell, which will be eliminated by issuance of the Letter of Request sought herein and supports the issuance of the Letter of Request, (b) asserts a number of "substantive objections" to the request for the Document Production, including that (i) the requested Documents have no relevance to the Debtor's bankruptcy estate, which is wholly contradicted by the fact that, as discussed above, the Debtor's 50% interest in LAMUK and amounts owed to him by LAMUK are the largest assets of the Debtor's bankruptcy estate, (ii)

certain requested Documents relate to proprietary or otherwise protected information, but with no suggestion for the form of a Non-Disclosure Agreement or protective order to address such concern, and (iii) argues that the Debtor's 50% ownership interest in LAMUK is subject to dispute despite that LAMUK's own documents on file with Companies House show that LAMUK itself admits that the Debtor owns equity in LAMUK.[8]  *See* GSBB Letter, a true and correct copy of which is attached hereto as **Exhibit "7."**

14.    Notably, in the GSBB Letter, (a) GSBB does not suggest any further meet and confer regarding the Document Production and the scope, timing, or any protections related thereto and instead essentially indicates that LAMUK will not produce any of the Documents and (b) GSBB does not even mention Bell or the request for an Examination of Bell in his capacity as the 50% owner, sole Director, and the Secretary of LAMUK.

15.    On January 29, 2026, after being directed to Waller regarding the requested Document Production and examination of Bell as the representative of LAMUK, LNBYG sent a further email to SA Law, again requesting a meet and confer to arrange for agreement regarding the production of the Documents by Bell and the examination of Bell in his capacity as an individual, a shareholder of LAMUK, or otherwise.  *See* third email exchange between LNBYG and SA Law attached hereto as **Exhibit "8"** (the "Third SA Law Email Exchange").

16.    In response to the foregoing and as a clear indication that Bell intends to evade any efforts to examine him under oath, on January 30, 2026, after responding to emails from LNBYG regarding the Document Production and Examination of Bell in connection with this bankruptcy case and affirmatively stating that SA Law "act[s] for Mr Bell in his capacity as a shareholder [of LAMUK],"[9] SA Law sent an email to LNBYG asserting that SA Law "does not act for Mr Bell in relation to Mr Lyampert's Chapter 11 proceedings." *See* Second SA Law Email Exchange.

/ / /

/ / /

---

[8] *See* n. 4, *supra*.

[9] *See* Second SA Law Email Exchange.

1         I declare and verify under penalty of perjury that the foregoing is true and correct to the

2    best of my knowledge.

3         Executed on this 17th day of February 2026, at Los Angeles, California.

4

5                              */s/ Todd M. Arnold*
                          TODD M. ARNOLD

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "1"**
**[DOCUMENTS TO BE PRODUCED]**

## DEFINITIONS

1.     "Bell" – means Dave Bell.

2.     "Communications" – means and shall include the giving, receiving, transmitting or exchanging of information by any means, including, but not limited to, by or via, letter, telephone, email, text message, Slack/Microsoft Teams/Zoom, WhatsApp, Threema, Signal, social media, and in-person conversations by or with any Person, talk, gestures, and any Documents, which memorialize or refer to any Communication.

3.     "Documents" – means all "documents" and other items identified in and within the scope of United States Fed. R. Civ. P. 34(a) and the 1970 Advisory Committee Note thereto, and all forms of "writings" and "recordings" as defined in United States Fed. R. Evid. 1001(1), and includes any reduction to tangible form, including computer or magnetic memory or storage, of communications, information, or data, including any written, recorded, or filmed graphic matter of any kind or nature, however produced or reproduced, and including originals, drafts, and non-identical copies, wherever located. This term includes, but is not limited to, Communications, letters, books, contracts, agreements, correspondence, emails, text messages, computer tapes, computer disks, printouts, keypunch cards, memoranda, diaries, notes, reports, bulletins, printed forms, telegraphic communications, pleadings and other legal papers, notes, telexes, telegrams, telecopies, facsimile reproductions or "faxes," factual compilations, electronic data compilations, statistical compilations, plans, diagrams, journals, change orders, studies, surveys, sketches, art work, graphics, checks, ledgers, catalogs, brochures, pamphlets, press releases, advertisements, invoices, minutes, photographs, microfilm, microfiche, films, personnel files, quotes, stenographic notes, computer discs, telephone records, schedules, bids, voice recordings, transcriptions, and lab notebooks. This definition applies to all Documents on the particular subject in Your possession, custody, or control, including Documents that are being held by someone acting on Your behalf and/or Documents that You have a legal right to access, such as those in the possession, custody or control of Your attorneys, agents, employees, officers, directors, or representatives, irrespective of who generated, prepared, or signed the Documents.

4.     "Frenkel" – means Roman Frenkel.

5.      "Inc" – means LA Micro Group, Inc.

6.      "LAMUK" – means LA Micro Group (UK) Limited.

7.      "Lyampert" – means Arkadiy Lyampert aka Arie Lyampert.

8.      "Person" – means and include natural persons, corporations, limited liability companies, partnerships, limited partnerships, associations, organizations, joint ventures, governmental units or entities, and any other kind of business or other entity.

9.      "You" and "Your" – means and refer to LAMUK and anyone acting at its direction or on its behalf, including, but not limited to, LAMUK's agents, employees, and representatives, including, but not limited to, Bell.

## DOCUMENTS TO BE PRODUCED

For the period of January 1, 2018 to the present:

1.      All LAMUK financial statements including, without limitation, bank account balances, balance sheet, profit and loss statements, income statements, and tax returns.

2.      All formal and informal valuations of LAMUK, its assets and/or equity interests therein.

3.      All Documents supporting efforts to obtain financing for LAMUK including, without limitation, applications for financing.

4.      All Documents supporting efforts to sell assets or equity interests in LAMUK including, without limitation, marketing materials, prospectus, projections.

5.      All Documents reflecting calculation and compensation paid to any officers, directors and shareholders of LAMUK.

6.      All Documents reflecting calculation and dividends paid to any shareholders of LAMUK.

7.      A complete list of all employees of LAMUK and their respective compensation, including payroll and operations records, annual payroll summaries, documents reflecting total employee compensation, and records showing payroll obligations and liabilities.

8.     All court-ordered costs owed by Frenkel and/or Inc to LAMUK and any of its directors and/or shareholders which remain outstanding.

9.     Any agreements between LAMUK, or any of its shareholders and/or directors, and any third parties, including Frenkel and his agents, concerning the ownership of LAMUK and potential transaction with respect to Lyampert's equity therein.

# EXHIBIT "2"

1  DAVID GOLUBCHIK (State Bar No. 185520)
   CARMELA T. PAGAY (State Bar No. 195603)
2  TODD M. ARNOLD (State Bar No. 221868)
   LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
3  2818 La Cienega Avenue
   Los Angeles, California 90034
4  Telephone: (310) 229-1234
   Facsimile: (310) 229-1244
5  Email: DBG@LNBYG.COM; CTP@LNBYG.COM; TMA@LNBYG.COM
6
   Attorneys for Debtor and Debtor in Possession
7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10             **SAN FERNANDO VALLEY DIVISION**

11

| | |
|---|---|
| In re: | Case No. 1:25−bk−12344−VK |
| ARKADIY LYAMPERT,<br>aka Arie Lyampert, | Chapter 11 Case |
| | Hon. Victoria S. Kaufman |
| Debtor and Debtor in Possession. | |
| | **REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (LETTER OF REQUEST)** |
| | |
| | Document Production Date and Time:<br> Date:     April 17, 2026<br> Time:     10:00 a.m. (PST)<br> Place:    Levene, Neale, Bender, Yoo<br>              & Golubchik L.L.P.<br>              2818 La Cienega Avenue<br>              Los Angeles, California 90034 |
| | Examination Date and Time:<br> Date:   May 1, 2026<br> Time:   6:00 a.m. (PST)/2:00 p.m. (Local UK Time)<br> Place:  Via Zoom or Other Teleconferencing Service |

1

### REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS

**TO THE CENTRAL AUTHORITY OF THE UNITED KINGDOM:**

The United States Bankruptcy Court for the Central District of California respectfully requests judicial assistance pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention"), to which both the United States and the United Kingdom are parties, to obtain evidence to be used in the bankruptcy case proceeding before this Court in the above-captioned matter (the "Bankruptcy Case"). The United States Bankruptcy Court for the Central District of California is a competent court of law and equity which properly has jurisdiction over this proceeding and has the power to compel the production of documents and the attendance of witnesses both within and outside its jurisdiction. This Court requests the assistance described herein as necessary in the interests of justice, to compel the appearance of the below named entity and individual located within your jurisdiction to give testimony and to produce documents, as more fully described below. Justice cannot completely be done in the above-referenced Bankruptcy Case without the requested testimony and the production of relevant documents. In conformity with Article 3 of the Hague Convention, the undersigned applicant respectfully submits the following:

**SENDER:**

The Honorable Victoria S. Kaufman, United States Bankruptcy Judge
United States Bankruptcy Court, Central District of California
21041 Burbank Boulevard, Suite 354 / Courtroom 301
Woodland Hills, CA 91367
UNITED STATES

**AUTHORITY FOR THE UNITED KINGDOM:**

The Senior Master
For the attention of the Foreign Process Section
Room E16
Royal Courts of Justice
Strand

LONDON WC2A 2LL
UNITED KINGDOM
Email: FOREIGNPROCESS.RCJ@JUSTICE.GOV.UK

**PERSON TO WHOM THE EXECUTED REQUEST IS TO BE RETURNED:**

The Honorable Victoria S. Kaufman, United States Bankruptcy Judge
United States Bankruptcy Court, Central District of California
21041 Burbank Boulevard, Suite 354 / Courtroom 301
Woodland Hills, CA 91367
UNITED STATES

David Golubchik
Todd M. Arnold
Levene, Neale, Bender, Yoo & Golubchik L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
UNITED STATES
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: DBG@LNBYG.COM; CTP@LNBYG.COM; TMA@LNBYG.COM

**DATE OF RESPONSE:**

Production of Documents:

As soon as reasonably practical, but no later than April 17, 2026.

Examination:
    Date:   Two weeks after the production of documents.
    Time:   6:00 a.m. (PST)/2:00 p.m. (Local UK Time)
    Place:  Via Zoom or Other Teleconferencing Service

**A.    IDENTITIES AND ADDRESSES OF ENTITY AND PERSON TO GIVE TESTIMONY AND PRODUCE DOCUMENTS:**

DOCUMENT PRODUCTION:
LA Micro Group (UK) Limited
Astro House Astro House, Unit 2
Attn: Lee Waller
Attn: Dave Bell
Bracknell
Berkshire, England, RG12 9BG
Email: lee.waller@lamicro.co.uk

DOCUMENT PRODUCTION AND EXAMINATION:
Dave Bell
2 Fisher House
Hillside Park
Sunningdale
Ascot, England, SL5 9RP

**B.     NATURE AND SUMMARY OF PROCEEDINGS AND SUMMARY OF FACTS:**

On December 16, 2025 (the "Petition Date"), Arkadiy Lyampert aka Arie Lyampert (the "Debtor") the Debtor filed a voluntary bankruptcy petition under Chapter 11 of Title 11 of the United States Code § 101 et seq. (the "Bankruptcy Code"),which initiated the above-captioned Bankruptcy Case.

The Debtor asserts that David Bell ("Bell") owns 50% of LA Micro Group (UK) Limited ("LAMUK") and is LAMUK's sole director and secretary.  The Debtor also asserts that (1) he owns the other 50% of LAMUK and (2) he has claims against LAMUK for compensation and dividends owed to him by LAMUK for the year of 2018 forward (together the "Assets").  The Debtor listed the foregoing Assets in his Schedules of Assets and Liabilities filed in his Bankruptcy Case, which is an indication that the Assets (or some portion of them) may be needed to fund a bankruptcy plan in his Bankruptcy Case.

Pursuant to the Debtor's *Ex Parte Motion, Pursuant To Federal Rule Of Bankruptcy Procedure 2004, Local Bankruptcy Rule 2004-1, And The Hague Convention For (1) The Production Of Documents By LA Micro Group (UK) Limited And Oral Examination Of David Bell And (2) The Issuance Of A Letter Of Request For International Judicial Assistance To Compel The Foregoing* (the "Rule 2004 Motion") filed with this Court, the Debtor is seeking documents from LAMUK and Bell related to the alleged Assets and to examine Bell regarding the Assets.  This Court granted the Rule 2004 Motion and is issuing this Letter of Request pursuant to, and as requested by, the Rule 2004 Motion to aid in compelling the production of documents and examination of Bell sought pursuant to the Rule 2004 Motion.

## C.    HAGUE ARTICLE 23 CONSIDERATIONS:

The Court is aware that Hague Convention, Article 23, provides as follows:

> A Contracting State may at the time of signature, ratification or accession, declare that it will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in Common Law countries.

The Court is also aware that the United Kingdom signed the Hague Convention with the following declaration:

> 3. In accordance with Article 23 Her Majesty's Government declare that the United Kingdom will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents. Her Majesty's Government further declare that Her Majesty's Government understand "Letters of Request issued for the purpose of obtaining pre-trial discovery of documents" for the purposes of the foregoing Declaration as including any Letter of Request which requires a person:
>
> a. to state what documents relevant to the proceedings to which the Letter of Request relates are, or have been, in his possession, custody or power; or
>
> b. to produce any documents other than particular documents specified in the Letter of Request as being documents appearing to the requested court to be, or to be likely to be, in his possession, custody or power. A Contracting State may at the time of signature, ratification or accession, declare that it will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in Common Law countries.

The Court submits that the request for assistance in this letter cannot be strictly defined as pre-trial discovery and, therefore, that the United Kingdom should execute this Letter of Request, because (1) pursuant to Section 541 of the Bankruptcy Code, on the Petition Date, a bankruptcy estate was created that includes, *inter alia*, (a) "all legal or equitable interests of the [D]ebtor in property as of the commencement of the [Bankruptcy Casse], (b) interests in property that the [Debtor] recovers under section 329(b), 363(n), 543, 550, 553, or 723 of [the Bankruptcy Code], and (c) "[a]ny interest in property that the estate acquires after the

commencement of the case [11 U.S.C. § 541(a), (2) in the Debtor's Schedules of Assets and Liabilities filed with this Court and signed by the Debtor under penalty of perjury, the Debtor listed the Assets as assets of his bankruptcy estate and the Assets includes claims against LAMUK for amounts allegedly owed to him, (3) United States Federal Rule of Bankruptcy Procedure 2004 provides for, *inter alia*, the examination and production of documents related to "the [D]ebtor's … property," "any matter that may affect the administration of the [D]ebtor's estate," "the source of any money or property the [D]ebtor acquired or will acquire for the purpose of consummating a plan and the consideration given or offered," and "any other matter relevant to the case or to formulating a plan" [Fed. R. Bankr. P. 2004(a) and (b)], (4) subject to extension, pursuant to Section 1121(b), the Debtor has the exclusive right to file a bankruptcy plan for the first 120-days after the Petition Date [*i.e.*, currently to and including April 15, 2026 [11 U.S.C. § 1121(b)], and (5) at minimum, the value of the Assets will have to be provided in order for the Debtor to propose a bankruptcy plan, because, in connection with proposing a plan, the Debtor will have to show that the value to be provided to creditors under the proposed plan exceeds the value that would be available to creditors in a hypothetical liquidation of all of his assets, including the subject Assets [11 U.S.C. § 1129(a)(7)].

**D.    EVIDENCE TO BE OBTAINED:**

This letter requests the production of the documents from LAMUK and Bell, as detailed more fully in **Attachment A**, for use as evidence in connection with efforts by the Debtor in the Bankruptcy Case to analyze, understand, value, and/or recover the Assets.

This letter further requests the oral testimony of Bell, as detailed more fully in **Attachment B**, for use as evidence in connection with efforts by the Debtor in the Bankruptcy Case to analyze, understand, value, and/or recover the Assets.

**E.    DOCUMENTS TO BE PRODUCED:**

This Court requests that LAMUK and Bell produce the documents identified in **Attachment A** hereto.

**F.     SUBJECT MATTER OF EXAMINATION:**

This Court requests that Bell be examined with respect to the questions and topics set forth in **Attachment B** hereto.

**G.     EVIDENCE TO BE GIVEN ON OATH OR AFFIRMATION:**

It is requested that Bell be sworn before testimony is taken and that an affirmation be given that all requested documents have been produced. If local law does not permit the use of oath or affirmation, then the testimony and evidence should be taken in the normal manner permitted pursuant to law of the United Kingdom.

**H.     PROCEDURES FOR EXAMINATION:**

It is requested that, in furtherance of justice and by the proper and usual process of your court, you:

1.     Summon the witness named above to be examined orally for the giving of evidence for use in connection with efforts by the Debtor in the Bankruptcy Case to analyze, understand, value, and/or recover the Assets;

2.     Cause the examination to be conducted via Zoom or other teleconferencing service to be arranged by the Debtor and with connection information to be provided by the Debtor or at such other location agreed to and arranged by counsel for the parties upon notification of a date and time for the execution of this Letter of Request;

3.     Cause the counsel for the Debtor to be permitted to directly ask the questions of Bell set forth in **Attachment B** hereto;

4.     Cause the testimony of Bell to be recorded verbatim by an Official Court Reporter appearing via Zoom or other teleconferencing service to be arranged by the Debtor;

5.     Cause the Official Court Reporter to mark for identification any documents provided by LAMUK and/or Bell, authenticate the transcripts of the examinations, and any documents produced at the examination, and to return the transcripts and documents by registered or certified mail to the parties' counsel of record listed below; and

6.      Cause the examination of Bell to be via video, audio, and stenographic means, with the transcripts and recordings returned by registered or certified mail to the parties' counsel of record listed below.

**7.      NAMES AND ADDRESSES OF THE PARTIES AND THEIR**

**REPRESENTATIVES:**

It is requested that the following persons be given notification of the time, date, and place of the execution of this request:

> **ATTORNEYS FOR THE DEBTOR**
> David Golubchik
> Todd M. Arnold
> Levene, Neale, Bender, Yoo & Golubchik L.L.P.
> 2818 La Cienega Avenue
> Los Angeles, California 90034
> UNITED STATES
> Telephone: (310) 229-1234
> Facsimile: (310) 229-1244
> Email: DBG@LNBYG.COM; CTP@LNBYG.COM; TMA@LNBYG.COM

**8.      PRIVILEGES UNDER THE LAW OF THE STATE OF ORIGIN:**

Under the laws of the United States, a witness has a privilege to refuse to give evidence if to do so would disclose a confidential communication between the witness and his or her attorney that was communicated specifically for the purpose of obtaining legal advice, as well as a privilege against criminal self-incrimination.  Other limited privileges on grounds not applicable here also exist, such as certain communications between doctors and patients, husband and wife, and clergy and penitent.  In addition, certain limited doctrines are recognized outside the strict definition of privilege, such as work product created by attorneys during or in anticipation of litigation.

**9.      REIMBURSEMENT OF COSTS:**

All reasonable fees and costs incurred that are reimbursable under the Hague Convention will be paid by the Debtor through his counsel of record.

**10.     RECIPROCATION:**

The United States Bankruptcy Court for the Central District of California extends its assurances that it stands ready and willing to provide similar assistance when so requested.

Dated: _____              _____
                                      HON. VICTORIA S. KAUFMAN
                                      United States Bankruptcy Judge
                                      United States Bankruptcy Court
                                      Central District of California
                                      21041 Burbank Boulevard
                                      Suite 354 / Courtroom 301
                                      Woodland Hills, CA 91367
                                      UNITED STATES



                                      KATHLEEN J. CAMPBELL, CLERK OF COURT

                                      By _____

                                      Deputy Clerk _____

                                      SEAL (Bankruptcy Court seal affixed here)

## ATTACHMENT A

## [DOCUMENT DEMANDS TO LA MICRO GROUP (UK) LIMITED AND BELL]

## DEFINITIONS

1.      "Bell" – means Dave Bell.

2.      "Communications" – means and shall include the giving, receiving, transmitting or exchanging of information by any means, including, but not limited to, by or via, letter, telephone, email, text message, Slack/Microsoft Teams/Zoom, WhatsApp, Threema, Signal, social media, and in-person conversations by or with any Person, talk, gestures, and any Documents, which memorialize or refer to any Communication.

3.      "Documents" – means all "documents" and other items identified in and within the scope of United States Fed. R. Civ. P. 34(a) and the 1970 Advisory Committee Note thereto, and all forms of "writings" and "recordings" as defined in United States Fed. R. Evid. 1001(1), and includes any reduction to tangible form, including computer or magnetic memory or storage, of communications, information, or data, including any written, recorded, or filmed graphic matter of any kind or nature, however produced or reproduced, and including originals, drafts, and non-identical copies, wherever located. This term includes, but is not limited to, Communications, letters, books, contracts, agreements, correspondence, emails, text messages, computer tapes, computer disks, printouts, keypunch cards, memoranda, diaries, notes, reports, bulletins, printed forms, telegraphic communications, pleadings and other legal papers, notes, telexes, telegrams, telecopies, facsimile reproductions or "faxes," factual compilations, electronic data compilations, statistical compilations, plans, diagrams, journals, change orders, studies, surveys, sketches, art work, graphics, checks, ledgers, catalogs, brochures, pamphlets, press releases, advertisements, invoices, minutes, photographs, microfilm, microfiche, films, personnel files, quotes, stenographic notes, computer discs, telephone records, schedules, bids, voice recordings, transcriptions, and lab notebooks. This definition applies to all Documents on the particular subject in Your possession, custody, or control, including Documents that are being held by someone acting on Your behalf and/or Documents that You have a legal right to access, such as

those in the possession, custody or control of Your attorneys, agents, employees, officers, directors, or representatives, irrespective of who generated, prepared, or signed the Documents.

4.      "Frenkel" – means Roman Frenkel.

5.      "Inc" – means LA Micro Group, Inc.

6.      "LAMUK" – means LA Micro Group (UK) Limited.

7.      "Lyampert" – means Arkadiy Lyampert aka Arie Lyampert.

8.      "Person" – means and include natural persons, corporations, limited liability companies, partnerships, limited partnerships, associations, organizations, joint ventures, governmental units or entities, and any other kind of business or other entity.

9.      "You" and "Your" – means and refer to LAMUK and anyone acting at its direction or on its behalf, including, but not limited to, LAMUK's agents, employees, and representatives, including, but not limited to, Bell.

### DOCUMENTS TO BE PRODUCED

For the period of January 1, 2018 to the present:

1.      All LAMUK financial statements including, without limitation, bank account balances, balance sheet, profit and loss statements, income statements, and tax returns.

2.      All formal and informal valuations of LAMUK, its assets and/or equity interests therein.

3.      All Documents supporting efforts to obtain financing for LAMUK including, without limitation, applications for financing.

4.      All Documents supporting efforts to sell assets or equity interests in LAMUK including, without limitation, marketing materials, prospectus, projections.

5.      All Documents reflecting calculation and compensation paid to any officers, directors and shareholders of LAMUK.

6.      All Documents reflecting calculation and dividends paid to any shareholders of LAMUK.

7.      A complete list of all employees of LAMUK and their respective compensation, including payroll and operations records, annual payroll summaries, documents reflecting total employee compensation, and records showing payroll obligations and liabilities.

8.      All court-ordered costs owed by Frenkel and/or Inc to LAMUK and any of its directors and/or shareholders which remain outstanding.

9.      Any agreements between LAMUK, or any of its shareholders and/or directors, and any third parties, including Frenkel and his agents, concerning the ownership of LAMUK and potential transaction with respect to Lyampert's equity therein.

# ATTACHMENT B

## [SPECIFIC QUESTIONS AND TOPICS IN CONNECTION WITH THE EXAMINATION OF BELL]

### DEFINITIONS

1.      "Bell" – means Dave Bell.

2.      "Communications" – means and shall include the giving, receiving, transmitting or exchanging of information by any means, including, but not limited to, by or via, letter, telephone, email, text message, Slack/Microsoft Teams/Zoom, WhatsApp, Threema, Signal, social media, and in-person conversations by or with any Person, talk, gestures, and any Documents, which memorialize or refer to any Communication.

3.      "Documents" – means all "documents" and other items identified in and within the scope of United States Fed. R. Civ. P. 34(a) and the 1970 Advisory Committee Note thereto, and all forms of "writings" and "recordings" as defined in United States Fed. R. Evid. 1001(1), and includes any reduction to tangible form, including computer or magnetic memory or storage, of communications, information, or data, including any written, recorded, or filmed graphic matter of any kind or nature, however produced or reproduced, and including originals, drafts, and non-identical copies, wherever located. This term includes, but is not limited to, Communications, letters, books, contracts, agreements, correspondence, emails, text messages, computer tapes, computer disks, printouts, keypunch cards, memoranda, diaries, notes, reports, bulletins, printed forms, telegraphic communications, pleadings and other legal papers, notes, telexes, telegrams, telecopies, facsimile reproductions or "faxes," factual compilations, electronic data compilations, statistical compilations, plans, diagrams, journals, change orders, studies, surveys, sketches, art work, graphics, checks, ledgers, catalogs, brochures, pamphlets, press releases, advertisements, invoices, minutes, photographs, microfilm, microfiche, films, personnel files, quotes, stenographic notes, computer discs, telephone records, schedules, bids, voice recordings, transcriptions, and lab notebooks. This definition applies to all Documents on the particular subject in Your possession, custody, or control, including Documents that are being held by

someone acting on Your behalf and/or Documents that You have a legal right to access, such as those in the possession, custody or control of Your attorneys, agents, employees, officers, directors, or representatives, irrespective of who generated, prepared, or signed the Documents.

4.    "Frenkel" – means Roman Frenkel.

5.    "Inc" – means LA Micro Group, Inc.

6.    "LAMUK" – means LA Micro Group (UK) Limited.

7.    "Lyampert" – means Arkadiy Lyampert aka Arie Lyampert.

8.    "Person" – means and include natural persons, corporations, limited liability companies, partnerships, limited partnerships, associations, organizations, joint ventures, governmental units or entities, and any other kind of business or other entity.

9.    "You" and "Your" – means and refer to LAMUK and anyone acting at its direction or on its behalf, including, but not limited to, LAMUK's agents, employees, and representatives, including, but not limited to, Bell.

<u>**SPECIFIC QUESTIONS**</u>

1.    Who are the current owners of the equity interests in LAMUK?

2.    What percentage of equity interests does each of the current owners of the equity interests in LAMUK own?

3.    What percentage of LAMUK does Lyampert currently own.

4.    What percentage of LAMUK did Lyampert own in each of the years from 2018 to 2025?

5.    What was the amount of LAMUK's gross income in each of the years from 2018 to 2025 and for 2026 to the present?

6.    What was the amount of LAMUK's net income before taxes in each of the years from 2018 to 2025 and for 2026 to the present?

7.    What was the amount of LAMUK's net income after taxes in each of the years from 2018 to 2025 and for 2026 to the present?

8.    What was the amount of LAMUK's assets as reflected on its balance sheet on January 1 in each of the years from 2018 to 2026?

14

9.      What was the amount of LAMUK's liabilities as reflected on its balance sheet on December 31 in each of the years from 2018 to 2025?

10.     What is the amount of LAMUK's liabilities as reflected on its balance sheet at present?

11.     What amount did LAMUK pay in taxes in the United Kingdom in each of the years from 2018 to 2025?

12.     What amount did LAMUK pay in taxes in the United States in each of the years from 2018 to 2025?

13.     What amount did LAMUK pay in taxes in any other country, other than the United Kingdom and the United States, in each of the years from 2018 to 2025?

14.     Are there any formal or informal valuations of LAMUK, its assets and/or equity interests therein for any period between January 1, 2018 to the present?

15.     If there were any formal or informal valuations of LAMUK, its assets and/or equity interests therein for any period between January 1, 2018 to the present, who conducted each valuation, what was the effective date of each valuation, what did each valuation value, and what was the valuation amount provided in each valuation?

16.     What efforts, if any, did LAMUK make during the period between January 1, 2018 to the present to obtain any financing?

17.     Did LAMUK obtain any financing at any time during the period between January 1, 2018 to the present?

18.     If LAMUK obtained any financing at any time during the period between January 1, 2018 to the present, provide the details for each financing, including, but not limited to, the Person who provided each financing, the date on which each financing was provided, and the amount of each financing.

19.     What efforts, if any, did LAMUK make during the period between January 1, 2018 to the present to sell the assets of, or equity interests in, LAMUK?

15

20.    Describe the compensation paid or provided to Bell by LAMUK, including any cash payments, reimbursements, and stock, for each of the years from 2018 to 2025 and for 2026 to the present.

21.    Describe how the compensation paid or provided to Bell by LAMUK for each of the years from 2018 to 2025 and for 2026 to the present was calculated.

22.    Describe the compensation paid or provided by LAMUK to any officers, directors, and/or shareholders, other than Bell, including any cash payments, reimbursements, and stock, for each of the years from 2018 to 2025 and for 2026 to the present.

23.    Describe how the compensation paid or provided by LAMUK to any officers, directors, and/or shareholders, other than Bell, for each of the years from 2018 to 2025 and for 2026 to the present was calculated.

24.    What amount of dividends were paid by LAMUK to Bell for each of the years from 2018 to 2025 and for 2026 to the present?

25.    How was the amount of any dividends that were paid by LAMUK to Bell for each of the years from 2018 to 2025 and for 2026 to the present calculated or determined?

26.    What amount of dividends were paid by LAMUK to any Person, other than Bell, for each of the years from 2018 to 2025 and for 2026 to the present?

27.    Name each Person, other than Bell, that received dividends from LAMUK for each of the years from 2018 to 2025 and for 2026 to the present.

28.    State the amount of dividends paid to each Person, other than Bell, that received dividends from LAMUK for each of the years from 2018 to 2025 and for 2026 to the present.

29.    How was the amount of any dividends that were paid by LAMUK to each Person, other than Bell, for each of the years from 2018 to 2025 and for 2026 to the present calculated or determined?

30.    Describe any court-ordered costs owed by Frenkel and/or Inc to LAMUK and any of its directors and/or shareholders which remain outstanding.

31.     Are there any agreements between LAMUK, or any of its shareholders and/or directors, and any third parties, including Frenkel and his agents, concerning the ownership of LAMUK and potential transaction with respect to Lyampert's equity therein?

32.     Describe any agreements between LAMUK, or any of its shareholders and/or directors, and any third parties, including Frenkel and his agents, concerning the ownership of LAMUK and potential transaction with respect to Lyampert's equity therein.

### **TOPICS**

1.     Follow-up and supplemental questions related to the Specific Questions set forth immediately above.

2.     Questions related to the Documents produced by LAMUK and/or Bell to Lyampert.

3.     For the period of January 1, 2018 to the present:

a.     All LAMUK financial statements including, without limitation, bank account balances, balance sheet, profit and loss statements, income statements, and tax returns.

b.     All formal and informal valuations of LAMUK, its assets and/or equity interests therein.

c.     Documents supporting efforts to obtain financing for LAMUK including, without limitation, applications for financing.

d.     Documents supporting efforts to sell assets or equity interests in LAMUK including, without limitation, marketing materials, prospectus, projections.

e.     Documents reflecting calculation and compensation paid to any officers, directors and shareholders of LAMUK.

f.     Documents reflecting calculation and dividends paid to any shareholders of LAMUK.

g.      Employees of LAMUK and their respective compensation, including payroll and operations records, annual payroll summaries, documents reflecting total employee compensation, and records showing payroll obligations and liabilities.

h.      Any court-ordered costs owed by Frenkel and/or Inc to LAMUK and any of its directors and/or shareholders which remain outstanding.

i.      Any agreements between LAMUK, or any of its shareholders and/or directors, and any third parties, including Frenkel and his agents, concerning the ownership of LAMUK and potential transaction with respect to Lyampert's equity therein.

# EXHIBIT "3"

## Todd M. Arnold

| | |
|---|---|
| **From:** | David B. Golubchik |
| **Sent:** | Monday, January 5, 2026 8:28 AM |
| **To:** | Simon Walsh |
| **Cc:** | Todd M. Arnold; Ashleigh MacCormack |
| **Subject:** | RE: In re Lyampert [SALAW-LIVE.FID6238309] |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Thank you for your response.  We will wait to hear from you on the issues.  We would prefer to work this out consensually.  In addition, prior to engaging an investment banking (sales) firm to market the 50% interest, I wanted to give your client an opportunity to provide a fair offer to purchase Mr. Lyampert's interest in the company since your client is the most logical purchaser of such equity.  Of course, to protect all parties, any sale would be subject to a motion and order of the federal bankruptcy court presiding over the case.

Thank you

**DAVID B. GOLUBCHIK,** Esq.

**LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.**
2818 La Cienega Ave  **|**  Los Angeles, CA  90034
Phone  310 229 1234  **|**  Direct  310 229 3393  **|**  Mobile  310 490 0330
dbg@lnbyg.com  **|**  **www.lnbyg.com**

The preceding E-mail message is subject to Levene, Neale, Bender, Yoo & Golubchik  L.L.P.'s
email policies which can be found at http://www.lnbyg.com/disclaimers.htm.

 Please consider the environment before printing this email

**From:** Simon Walsh <Simon.Walsh@salaw.com>
**Sent:** Monday, January 5, 2026 7:01 AM
**To:** David B. Golubchik <DBG@lnbyg.com>
**Cc:** Todd M. Arnold <TMA@lnbyg.com>; Ashleigh MacCormack <Ashleigh.MacCormack@salaw.com>
**Subject:** RE: In re Lyampert [SALAW-LIVE.FID6238309]

Dear Mr Golubchik

Thank you for your email which arrived while I was on leave.

We are taking instructions.  Please confirm the application you refer to below will not be made pending our substantive to your questions.

Yours sincerely

Simon Walsh



**SIMON WALSH**

PARTNER

COMMERCIAL LITIGATION & DISPUTE RESOLUTION TEAM

**Direct Tel:** 01727 798 085  |  **Mob:** 07725 245 723

simon.walsh@salaw.com



---

**salaw.com**  |  **Tel** 01727 798 000  |  **Fax** 01727 798 070  |  LinkedIn    Instagram    Facebook

SA Law LLP, Gladstone Place, 36-38 Upper Marlborough Road, St Albans, Hertfordshire AL1 3UU
**Meetings available by appointment:** 91 Wimpole Street, London W1G 0EF

---

**From:** David B. Golubchik <DBG@lnbyg.com>
**Sent:** 27 December 2025 18:46
**To:** Charlie Cheshire <Charlie.Cheshire@salaw.com>; Simon Walsh <Simon.Walsh@salaw.com>; Amber Keye
<amber.keye@salaw.com>
**Cc:** Todd M. Arnold <TMA@lnbyg.com>
**Subject:** In re Lyampert

Counsel,

First, Happy Holidays.

Second, this law firm is bankruptcy counsel to Mr. Lyampert, who commences a Chapter 11 bankruptcy case
on 16 December 2025, in the United States Bankruptcy Court for t6he Central District of California.  Attached
is a Noticed of Commencement for your records.  Pursuant to Section 541(a) of the Bankruptcy Code, property
of the Debtor's bankruptcy estate includes all legal, equitable and other interests in assets.  As you are aware,
Mr. Lyampert asserts a 50% equity interest in LA Micro Group UK Ltd. ("LAMUK"), where Mr. Bell asserts the
remaining 50% interest.  We understand that Mr. Bell continues to operate LAMUK but has not provided to
Mr. Lyampert his dividends, compensation of financial information with respect to the company.  Please
consider this email to be a request to provide the following information to this office for the period of January
1, 2018 to the present:

1. All financial statements including, without limitation, bank account balances, balance sheet, profit
   and loss statements, income statements, and tax returns;
2. All formal and information valuations of LAMUK, its assets and/or equity interests therein;
3. All documents supporting efforts to obtain financing for LAMUK including, without limitation,
   applications for financing;
4. All documents supporting efforts to sell assets or equity interests in LAMUK including, without
   limitation, marketing materials, prospectus, projections …  (we are aware that in 2022, Mr. Bell was
   discussing a potential sale of his equity interest in LAMUK with a company in California and/or US);
5. All documents reflecting calculation and compensation paid to any officers, directors and
   shareholders of LAMUK;
6. All documents reflecting calculation and dividends paid to any shareholders of LAMUK;
7. A complete list of all employees of LAMUK and their respective compensation, including payroll and
   operations records, annual payroll summaries, documents reflecting total employee compensation,

and records showing payroll obligations and liabilities (we understand that LAMUK employs approximately 70 employees with total annual payroll exceeding £7 million.);

8. All court-ordered costs owed by Frenkel/Inc to LAMUK and Dave Bell which remain outstanding;

9. Any agreements between Mr. Bell and any third parties, including Frenkel and his agents, concerning the ownership of LAMUK and potential transaction with respect to Mr. Lyampert's equity therein. If documents are not being produced based on confidentiality provisions, please identify the document and the confidentiality provision therein.

Since our respective clients are partners in the same business and the 50% shareholder is entitled to the information, we hope this will be non-controversial and the requested documents will be provided. If we do not receive the requested documents by 8 January 2026, we will have no choice but to file appropriate pleadings before the Bankruptcy Court to compel such production. Should you wish to discuss any of the foregoing, please do not hesitate to contact Todd Arnold (copied here) with any questions.

Your prompt attention to this matter is appreciated.

**DAVID B. GOLUBCHIK,** Esq.

**LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.**
2818 La Cienega Ave    |    Los Angeles, CA   90034
Phone  310 229 1234    |    Direct  310 229 3393    |   Mobile  310 490 0330
dbg@lnbyg.com    |    **www.lnbyg.com**

The preceding E-mail message is subject to Levene, Neale, Bender, Yoo & Golubchik  L.L.P.'s email policies which can be found at http://www.lnbyg.com/disclaimers.htm.

 Please consider the environment before printing this email

*******************************************************

This e-mail has been sent from SA Law LLP at Gladstone Place, 36 - 38 Upper Marlborough Road, St Albans, Hertfordshire, AL1 3UU.

**IMPORTANT NOTE** We are very aware of the increased threat of Cyber Fraud in particular with regard to details relating to bank accounts. We are mindful of examples where some solicitors firms have been targeted by fraudsters to divert funds. Please note that it is not intended that our Bank details will change during the course of this transaction and if they do we will notify you accordingly. In such circumstances we would ask that you refer back to us, by telephone, to ratify the legitimacy of such amended details before undertaking any transfer of funds to our account. We will not accept any responsibility for funds transferred into an incorrect account.

This message and any attachments are confidential. They are intended for the addressee only. Access to this e-mail by anyone else is not authorised. Unauthorised recipients may not copy this message or its attachments. If you have received this e-mail in error please notify us immediately, destroy any copies and delete it from your computer system. Whilst this message and any attachments have been scanned for known viruses prior to leaving the SA Law network, the recipient should check this email for viruses as SA Law cannot guarantee the security of this message.

SA Law LLP, trading as SA Law, is a limited liability partnership authorised and regulated by the Solicitors Regulation Authority (SRA Number 421442) and is registered in England number OC311332. A list of members is open for inspection at this office.

VAT Number 857 0205 35

Solicitors Regulation Authority's rules can be found at www.sra.org.uk/code-of-conduct.page

*********************************************************

Scanned by Barracuda email security

*********************************************************

# EXHIBIT "4"

**Todd M. Arnold**

| | |
|---|---|
| **From:** | Simon Walsh <Simon.Walsh@salaw.com> |
| **Sent:** | Tuesday, January 20, 2026 10:24 AM |
| **To:** | David B. Golubchik |
| **Cc:** | Todd M. Arnold; Ashleigh MacCormack |
| **Subject:** | RE: In re Lyampert [SALAW-LIVE.FID6238309] |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Dear Mr Golubchik

You should contact the company's General Manager, Lee Waller whose email address is: lee.waller@lamicro.co.uk.

Yours sincerely

Simon Walsh



| | **SIMON WALSH**<br>PARTNER<br>COMMERCIAL LITIGATION & DISPUTE RESOLUTION TEAM<br><br>**Direct Tel:** 01727 798 085  |  **Mob:** 07725 245 723<br>simon.walsh@salaw.com |  |
|---|---|---|

---

**salaw.com**  |  **Tel** 01727 798 000   |  **Fax** 01727 798 070  |  LinkedIn   Instagram   Facebook

SA Law LLP, Gladstone Place, 36-38 Upper Marlborough Road, St Albans, Hertfordshire AL1 3UU
**Meetings available by appointment:** 91 Wimpole Street, London W1G 0EF

---

**From:** David B. Golubchik <DBG@lnbyg.com>
**Sent:** 19 January 2026 15:32
**To:** Simon Walsh <Simon.Walsh@salaw.com>
**Cc:** Todd M. Arnold <TMA@lnbyg.com>; Ashleigh MacCormack <Ashleigh.MacCormack@salaw.com>
**Subject:** Re: In re Lyampert [SALAW-LIVE.FID6238309]

Thank you for your response. Is there a counsel or representative for the company to contact?

**DAVID B. GOLUBCHIK,** Esq.
**LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.**
2818 La Cienega Ave.  |  Los Angeles, CA  90034
Phone  310 229 1234  |  Direct  310 229 3393  |  Cell 310 490 0330

dbg@lnbyg.com  |  **www.lnbyg.com**

On Jan 19, 2026, at 7:29 AM, Simon Walsh <Simon.Walsh@salaw.com> wrote:

Dear Mr Golubchik,

I refer to the requests in your email dated 27 December 2025.

We act for Mr Bell in his capacity as a shareholder in LA Micro Group (UK) Ltd (**LAMUK**).

Mr Bell has asked us to respond to your correspondence.  While Mr Bell is also a director of LAMUK, we are instructed and respond on his behalf solely in his capacity as a shareholder.

The information and documents you have asked for are company records.  In his capacity as a shareholder, Mr Bell does not hold, control, or have unilateral authority to disclose such material, nor is he entitled to do so.  This includes (without limitation) financial statements, valuations, financing materials, payroll and employee information, dividend calculations and operational records.

Accordingly, any such requests would be better directed to LAMUK so it can consider them, subject to proper process and advice.

Nothing in this response should be taken as an acceptance of any obligation, entitlement, or jurisdiction under US bankruptcy law. All rights are reserved.

Yours sincerely

Simon Walsh

**SIMON WALSH**

PARTNER

COMMERCIAL LITIGATION & DISPUTE RESOLUTION TEAM

**Direct Tel:** 01727 798 085  |  **Mob:** 07725 245 723
simon.walsh@salaw.com

---

**salaw.com**  |  **Tel** 01727 798 000  |  **Fax** 01727 798 070  |  LinkedIn    Instagram    Facebook

SA Law LLP, Gladstone Place, 36-38 Upper Marlborough Road, St Albans, Hertfordshire AL1 3UU
**Meetings available by appointment:** 91 Wimpole Street, London W1G 0EF

---

**From:** David B. Golubchik <DBG@lnbyg.com>
**Sent:** 13 January 2026 20:15
**To:** Simon Walsh <Simon.Walsh@salaw.com>
**Cc:** Todd M. Arnold <TMA@lnbyg.com>; Ashleigh MacCormack <Ashleigh.MacCormack@salaw.com>
**Subject:** RE: In re Lyampert [SALAW-LIVE.FID6238309]

Mr. Walsh,

I have not heard back from you with any substantive information.  In an overabundance of caution, please consider this communication to constitute a meet and confer in accordance with Local Bankruptcy Rule 2004-1 prior to filing the motion for an examination.  The documents and information sought are set forth below.  We would subsequently take Mr. Bell oral examination within 2 weeks after receipt of the documents.  The rules provide for a minimum of 21 days notice, but I would like to proceed cooperatively.  As a result, please advise as to the following:

1. Confirmation that the requested documents/information will be provided.  If there are any disputes, please advise which information is disputes and which is not.
2. Timing of the document production.
3. Available dates for Mr. Bell's oral examination, which we can conduct via Zoom or other online platform.

We look forward to your response by Friday, 16 January 2026.  We can file a stipulation with agreement of the parties if an agreement is reached or we will proceed with a motion promptly after this deadline.

Thank you


**DAVID B. GOLUBCHIK,** Esq.

**LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.**
2818 La Cienega Ave  **|**  Los Angeles, CA  90034
Phone  310 229 1234  **|**  Direct  310 229 3393  **|**  Mobile  310 490 0330
dbg@lnbyg.com  **|**  **www.lnbyg.com**

The preceding E-mail message is subject to Levene, Neale, Bender, Yoo & Golubchik  L.L.P.'s email policies which can be found at http://www.lnbyg.com/disclaimers.htm.

 Please consider the environment before printing this email

**From:** Simon Walsh <Simon.Walsh@salaw.com>
**Sent:** Monday, January 5, 2026 7:01 AM
**To:** David B. Golubchik <DBG@lnbyg.com>
**Cc:** Todd M. Arnold <TMA@lnbyg.com>; Ashleigh MacCormack <Ashleigh.MacCormack@salaw.com>
**Subject:** RE: In re Lyampert [SALAW-LIVE.FID6238309]

Dear Mr Golubchik

Thank you for your email which arrived while I was on leave.

We are taking instructions.  Please confirm the application you refer to below will not be made pending our substantive to your questions.

Yours sincerely

Simon Walsh

**SIMON WALSH**

PARTNER

COMMERCIAL LITIGATION & DISPUTE RESOLUTION TEAM

**Direct Tel:** 01727 798 085  |  **Mob:** 07725 245 723

simon.walsh@salaw.com

---

**salaw.com**  |  **Tel** 01727 798 000   |  **Fax** 01727 798 070  |  LinkedIn    Instagram    Facebook

SA Law LLP, Gladstone Place, 36-38 Upper Marlborough Road, St Albans, Hertfordshire AL1 3UU
**Meetings available by appointment:** 91 Wimpole Street, London W1G 0EF

---

**From:** David B. Golubchik <DBG@lnbyg.com>
**Sent:** 27 December 2025 18:46
**To:** Charlie Cheshire <Charlie.Cheshire@salaw.com>; Simon Walsh <Simon.Walsh@salaw.com>; Amber Keye <amber.keye@salaw.com>
**Cc:** Todd M. Arnold <TMA@lnbyg.com>
**Subject:** In re Lyampert

Counsel,

First, Happy Holidays.

Second, this law firm is bankruptcy counsel to Mr. Lyampert, who commences a Chapter 11 bankruptcy case on 16 December 2025, in the United States Bankruptcy Court for t6he Central District of California.  Attached is a Noticed of Commencement for your records.  Pursuant to Section 541(a) of the Bankruptcy Code, property of the Debtor's bankruptcy estate includes all legal, equitable and other interests in assets.  As you are aware, Mr. Lyampert asserts a 50% equity interest in LA Micro Group UK Ltd. ("LAMUK"), where Mr. Bell asserts the remaining 50% interest.  We understand that Mr. Bell continues to operate LAMUK but has not provided to Mr. Lyampert his dividends, compensation of financial information with respect to the company.  Please consider this email to be a request to provide the following information to this office for the period of January 1, 2018 to the present:

1.  All financial statements including, without limitation, bank account balances, balance sheet, profit and loss statements, income statements, and tax returns;
2.  All formal and information valuations of LAMUK, its assets and/or equity interests therein;
3.  All documents supporting efforts to obtain financing for LAMUK including, without limitation, applications for financing;
4.  All documents supporting efforts to sell assets or equity interests in LAMUK including, without limitation, marketing materials, prospectus, projections … (we are aware that in 2022, Mr. Bell was discussing a potential sale of his equity interest in LAMUK with a company in California and/or US);

4

5. All documents reflecting calculation and compensation paid to any officers, directors and shareholders of LAMUK;

6. All documents reflecting calculation and dividends paid to any shareholders of LAMUK;

7. A complete list of all employees of LAMUK and their respective compensation, including payroll and operations records, annual payroll summaries, documents reflecting total employee compensation, and records showing payroll obligations and liabilities (we understand that LAMUK employs approximately 70 employees with total annual payroll exceeding £7 million.);

8. All court-ordered costs owed by Frenkel/Inc to LAMUK and Dave Bell which remain outstanding;

9. Any agreements between Mr. Bell and any third parties, including Frenkel and his agents, concerning the ownership of LAMUK and potential transaction with respect to Mr. Lyampert's equity therein. If documents are not being produced based on confidentiality provisions, please identify the document and the confidentiality provision therein.

Since our respective clients are partners in the same business and the 50% shareholder is entitled to the information, we hope this will be non-controversial and the requested documents will be provided. If we do not receive the requested documents by 8 January 2026, we will have no choice but to file appropriate pleadings before the Bankruptcy Court to compel such production. Should you wish to discuss any of the foregoing, please do not hesitate to contact Todd Arnold (copied here) with any questions.

Your prompt attention to this matter is appreciated.

**DAVID B. GOLUBCHIK,** Esq.

**LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.**
2818 La Cienega Ave   **|**   Los Angeles, CA   90034
Phone  310 229 1234   **|**  Direct  310 229 3393   **|**  Mobile  310 490 0330
dbg@lnbyg.com   **|**   **www.lnbyg.com**

The preceding E-mail message is subject to Levene, Neale, Bender, Yoo & Golubchik  L.L.P.'s email policies which can be found at http://www.lnbyg.com/disclaimers.htm

 Please consider the environment before printing this email

**********************************************************

This e-mail has been sent from SA Law LLP at Gladstone Place, 36 - 38 Upper Marlborough Road, St Albans, Hertfordshire, AL1 3UU.

**IMPORTANT NOTE** We are very aware of the increased threat of Cyber Fraud in particular with regard to details relating to bank accounts. We are mindful of examples where some solicitors firms have been targeted by fraudsters to divert funds. Please note that it is not intended that our Bank details will change during the course of this transaction and if they do we will notify you accordingly. In such circumstances we would ask that you refer back to us, by telephone, to ratify the legitimacy of such amended details before undertaking any transfer of funds to our account. We will not accept any responsibility for funds transferred into an incorrect account.

This message and any attachments are confidential. They are intended for the addressee only. Access to this e-mail by anyone else is not authorised. Unauthorised recipients may not copy this message or its attachments. If you have received this e-mail in error please notify us immediately, destroy any copies and delete it from your computer system. Whilst this message and any attachments have been scanned for known viruses prior to leaving the SA Law network, the recipient should check this email for viruses as SA Law cannot guarantee the security of this message.

SA Law LLP, trading as SA Law, is a limited liability partnership authorised and regulated by the Solicitors Regulation Authority (SRA Number 421442) and is registered in England number OC311332. A list of members is open for inspection at this office.

VAT Number 857 0205 35

Solicitors Regulation Authority's rules can be found at www.sra.org.uk/code-of-conduct.page

*********************************************************

Scanned by Barracuda email security

*********************************************************

# EXHIBIT "5"

# Cookies on Companies House services

We use some essential cookies to make our services work.

We'd also like to use analytics cookies so we can understand how you use our services and to make improvements.

Accept analytics cookies        Reject analytics cookies

[View cookies (/help/cookies)](/help/cookies)

 **GOV·UK**

## Find and update company information (https://beta.companieshouse.gov.uk/)

[Companies House does not verify the accuracy of the information filed (http://resources.companieshouse.gov.uk/serviceInformation.shtml#compInfo)](http://resources.companieshouse.gov.uk/serviceInformation.shtml#compInfo)

Search for a company or officer

[Advanced company search (/advanced-search)](/advanced-search)

# LA MICRO GROUP (UK) LIMITED

Company number **05113241**

Follow this company

File for this company (https://beta.companieshouse.gov.uk/company/05113241/authorise?return_to=/company/05113241)

Overview    Filing history    People    Charges    More

Registered office address
  Astro House Astro House, Unit 2 Brants Bridge, Bracknell, Berkshire,
  England, RG12 9BG

Company status
  Active

Company type
  Private limited Company

Incorporated on
  27 April 2004

# Accounts

Next accounts made up to **28 October 2025**
due by **28 July 2026**

Last accounts made up to **31 October 2024**

# Confirmation statement

Next statement date **24 April 2026**
due by **8 May 2026**

Last statement dated **24 April 2025**

# Nature of business (SIC)

- 62090 - Other information technology service activities

# Previous company names

| Name | Period |
| --- | --- |
| WINDBELL INVESTMENTS LIMITED | 27 Apr 2004 - 07 Oct 2004 |

Tell us what you think of this service (https://www.smartsurvey.co.uk/s/getcompanyinformation/) Is there
anything wrong with this page? (/help/feedback?sourceurl=https://find-and-update.company-
information.service.gov.uk/company/05113241)



Policies Link opens in new tab

Cookies (https://beta.companieshouse.gov.uk/help/cookies)

Contact us Link opens in new tab

Accessibility statement (https://
beta.companieshouse.gov.uk/help/accessibility-statement)

Developers Link opens in new tab

Built by Companies House                    © Crown copyright

## Cookies on Companies House services

We use some essential cookies to make our services work.

We'd also like to use analytics cookies so we can understand how you use our services and to make improvements.

Accept analytics cookies       Reject analytics cookies

View cookies (/help/cookies)

 **GOV·UK**

**Find and update company information (https://beta.companieshouse.gov.uk/)**

Companies House does not verify the accuracy of the information filed (http://resources.companieshouse.gov.uk/serviceInformation.shtml#compInfo)

Search for a company or officer

Advanced company search (/advanced-search)

# LA MICRO GROUP (UK) LIMITED

Company number **05113241**

Follow this company

File for this company (https://beta.companieshouse.gov.uk/company/05113241/authorise?return_to=/company/05113241/officers)

Overview    Filing history    People    Charges    More

- Officers
- Persons with significant control (/company/05113241/persons-with-significant-control)

# Filter officers

☐

Current officers

Apply filter

# 5 officers / 3 resignations

---

## BELL, David Leechman

Correspondence address
**2 Fisher House, Hillside Park, Sunningdale, Ascot, England, SL5 9RP**

Role Active  **Secretary**

Appointed on  **1 July 2004**

Nationality  **British**

---

## BELL, David Leechman

Correspondence address
**2 Fisher House, Hillside Park, Sunningdale, Ascot, England, SL5 9RP**

Role Active  **Director**

Date of birth  **October 1964**

Appointed on  **1 July 2004**

Nationality  **British**

Country of residence  **England**

Identity verification due  **8 May 2026**

---

## TEMPLE SECRETARIES LIMITED

Correspondence address  **788-790 Finchley Road, London, NW11 7TJ**

Role Resigned  **Nominee Secretary**

Appointed on  **27 April 2004**

Resigned on  **1 July 2004**

---

## LYAMPERT, Arie

Correspondence address
**25531 Prado De Azul, Calabasas, California. 91302 - 3669, Usa**

Role Resigned  **Director**

Date of birth  **November 1964**

Appointed on  **3 August 2004**

Resigned on  **18 November 2022**

Nationality  **American**

Country of residence  **United States**

---

## COMPANY DIRECTORS LIMITED

Correspondence address  **788-790 Finchley Road, London, NW11 7TJ**

Role Resigned  **Nominee Director**

Appointed on  **27 April 2004**

Resigned on  **1 July 2004**

---

Policies Link opens in new tab

Cookies (https://beta.companieshouse.gov.uk/help/cookies)

Contact us Link opens in new tab

Accessibility statement (https://
beta.companieshouse.gov.uk/help/accessibility-statement)

Developers Link opens in new tab

Built by Companies House

© Crown copyright

# Cookies on Companies House services

We use some essential cookies to make our services work.

We'd also like to use analytics cookies so we can understand how you use our services and to make improvements.

Accept analytics cookies          Reject analytics cookies

[View cookies (/help/cookies)](/help/cookies)

 **GOV·UK**

**Find and update company information (https://beta.companieshouse.gov.uk/)**

[Companies House does not verify the accuracy of the information filed (http://resources.companieshouse.gov.uk/serviceInformation.shtml#compInfo)](http://resources.companieshouse.gov.uk/serviceInformation.shtml#compInfo)

Search for a company or officer

[Advanced company search (/advanced-search)](/advanced-search)

# LA MICRO GROUP (UK) LIMITED

Company number **05113241**

Follow this company

File for this company (https://beta.companieshouse.gov.uk/company/05113241/authorise?return_to=/company/05113241/personsf- ithfsignivicantfcontrol)

Overview    Filing history    People    Charges    More

- Officers (/company/05113241/officers)
- Persons with significant control

2 active persons with significant control / 0 active statements

---

# Mr Arie Lyampert Active

Correspondence address
**25531 Pado De Azul, Calabasas, California, United States**

Notified on **28 April 2025**

Date of birth **November 1964**

Nationality **American**

Country of residence **United States**

Identity verification due from **1 November 2026**

Identity verification due by **14 November 2026**

Nature of control
**Ownership of shares – More than 25% but not more than 50%**

---

# Mr David Leechman Bell Active

Correspondence address
**2 Fisher House, Hillside Park, Sunningdale, Ascot, England, SL5 9RP**

Notified on **6 April 2016**

Date of birth **October 1964**

Nationality **British**

Country of residence **England**

Identity verification due from **25 April 2026**

Identity verification due by **8 May 2026**

Nature of control
**Ownership of shares – More than 25% but not more than 50%
Ownership of voting rights - More than 25% but not more than 50%
Right to appoint or remove directors**

---

# Mr Arie Lyampert Ceased

Correspondence address
**25531 Prado De Azul, Calabasas, California. 91302-3669, Usa**

Notified on **6 April 2016**

Ceased on **18 November 2022**

Date of birth **November 1964**

Nationality **American**

Country of residence **United States**

Nature of control
**Ownership of shares – More than 25% but not more than 50%
Ownership of voting rights - More than 25% but not more than 50%
Right to appoint or remove directors**

---

Tell us what you think of this service (https://www.smartsurvey.co.uk/s/getcompanyinformation/) Is there

anything wrong with this page? (/help/feedback?sourceurl=https://find-and-update.company-information.service.gov.uk/company/05113241/persons-with-significant-control)



Policies Link opens in new tab

Cookies (https://beta.companieshouse.gov.uk/help/cookies)

Contact us Link opens in new tab

Accessibility statement (https://beta.companieshouse.gov.uk/help/accessibilityfstatement)

Developers Link opens in new tab

Built by Companies House

© Crown copyright

# EXHIBIT "6"

## Todd M. Arnold

| | |
|---|---|
| **From:** | Lee Waller <lee.waller@lamicro.co.uk> |
| **Sent:** | Thursday, January 22, 2026 4:44 AM |
| **To:** | David B. Golubchik |
| **Cc:** | Todd M. Arnold |
| **Subject:** | Re: In re Lyampert [SALAW-LIVE.FID6238309] |
| | |
| **Importance:** | High |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Mr Arnold,

Thank you for your email. We confirm receipt.

At present, LA Micro Group (UK) Ltd is in the process of seeking and instructing appropriate US
bankruptcy counsel to advise on the Chapter 11 position and the proper framework for responding to
requests of this nature.

Given that process is ongoing, we will not be in a position to provide a substantive response before 26
January 2026. Once US bankruptcy counsel has been formally instructed, our attorneys will respond to
you directly and engage on the appropriate next steps.

In the meantime, please treat this email as acknowledgement only and not as acceptance of any
obligation, entitlement, jurisdiction, or process under US bankruptcy law. All rights are expressly
reserved.

Yours faithfully,
Lee Waller
For and on behalf of
LA Micro Group (UK) Ltd

---

**From:** "David B. Golubchik" <DBG@lnbyg.com>
**Date:** Tuesday, 20 January 2026 at 18:59
**To:** Lee Waller <lee.waller@lamicro.co.uk>
**Cc:** "Todd M. Arnold" <TMA@lnbyg.com>, Simon Walsh <simon.walsh@salaw.com>
**Subject:** FW: In re Lyampert [SALAW-LIVE.FID6238309]

You don't often get email from dbg@lnbyg.com. Learn why this is important

Mr. Waller,

Simon Walsh suggested that I contact you.  I am copying him with this email to make sure I understood
him correctly.

This law firm is bankruptcy counsel to Arkadiy Lyampert, who commenced a Chapter 11 bankruptcy case on 16 December 2025, in the United States Bankruptcy Court for the Central District of California.  Pursuant to Section 541(a) of the Bankruptcy Code, property of the Debtor's bankruptcy estate includes all legal, equitable and other interests in assets.  As you are aware, Mr. Lyampert asserts a 50% equity interest in LA Micro Group UK Ltd. ("LAMUK").  We previously contact Mr. Walsh, as counsel for Mr. Bell, with the request below but he instructed to contact you instead.  If you have counsel for the company that you prefer for me to communicate with, please send counsel's information or forward this email to counsel with a request to contact me.

Notwithstanding Mr. Lyamper's ownership and involvement with LAMUK, we understand that LAMUK has not provided to Mr. Lyampert his dividends, compensation of financial information with respect to the company.  Please consider this email to be a request to provide the following information to this office for the period of January 1, 2018 to the present:

1. All financial statements including, without limitation, bank account balances, balance sheet, profit and loss statements, income statements, and tax returns;
2. All formal and information valuations of LAMUK, its assets and/or equity interests therein;
3. All documents supporting efforts to obtain financing for LAMUK including, without limitation, applications for financing;
4. All documents supporting efforts to sell assets or equity interests in LAMUK including, without limitation, marketing materials, prospectus, projections … (we are aware that in 2022, Mr. Bell was discussing a potential sale of his equity interest in LAMUK with a company in California and/or US);
5. All documents reflecting calculation and compensation paid to any officers, directors and shareholders of LAMUK;
6. All documents reflecting calculation and dividends paid to any shareholders of LAMUK;
7. A complete list of all employees of LAMUK and their respective compensation, including payroll and operations records, annual payroll summaries, documents reflecting total employee compensation, and records showing payroll obligations and liabilities (we understand that LAMUK employs approximately 70 employees with total annual payroll exceeding £7 million.);
8. All court-ordered costs owed by Frenkel/Inc to LAMUK and any of its directors and/or shareholders which remain outstanding;
9. Any agreements between LAMUK, or any of its shareholders and/or directors, and any third parties, including Frenkel and his agents, concerning the ownership of LAMUK and potential transaction with respect to Mr. Lyampert's equity therein.  If documents are not being produced based on confidentiality provisions, please identify the document and the confidentiality provision therein.

Since Mr. Lyampert is an owner of LAMUK, we hope this will be non-controversial and the requested documents will be provided.  If we do not receive the requested documents by 26 January 2026, we will have no choice but to file appropriate pleadings before the Bankruptcy Court to compel such production. This will be effectuated by Rule 2004 of the Federal Rules of Bankruptcy Procedure, which permits such investigation and discovery without a pending lawsuit in bankruptcy.  In an overabundance of caution, and unless the requested documents will be timely provided, please consider this communication to constitute a meet and confer in accordance with Local Bankruptcy Rule 2004-1 prior to filing the motion for an examination.  The documents and information sought are set forth above.  We would subsequently take the oral examination of LAMUK's representative within 2 weeks after receipt of the documents.  The rules provide for a minimum of 21 days' notice, but I would like to proceed cooperatively.  As a result, please advise as to the following:

1. Confirmation that the requested documents/information will be provided. If there are any disputes, please advise which information is disputes and which is not.
2. Timing of the document production.
3. Available dates for LAMUK's representative's oral examination, which we can conduct via Zoom or other online platform.

Should you wish to discuss any of the foregoing, please do not hesitate to contact Todd Arnold (copied here) with any questions.

Your prompt attention to this matter is appreciated.

**DAVID B. GOLUBCHIK,** Esq.

**LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.**
2818 La Cienega Ave  **|**  Los Angeles, CA  90034
Phone  310 229 1234  **|**  Direct  310 229 3393  **|**  Mobile  310 490 0330
dbg@lnbyg.com  **|**  **www.lnbyg.com**

The preceding E-mail message is subject to Levene, Neale, Bender, Yoo & Golubchik  L.L.P.'s
email policies which can be found at http://www.lnbyg.com/disclaimers.htm.

 Please consider the environment before printing this email

***** Email confidentiality notice *****

This email and any attachments are private and confidential. If you have received this message in error, please notify us and remove it from your system. Any views or opinions expressed are solely those of the author and do not necessarily represent those of LA Micro Group (UK) LTD.

If you are not the intended recipient of this email, you must neither take any action based upon its contents, nor copy or show it to anyone.

Please contact the sender if you believe you have received this email in error.

LA Micro Group (UK) Ltd provide DELL Refurbished Hardware. Any DELL product sold by LA Micro (UK) group Ltd is supplied with NO DELL warranty unless specifically specified otherwise. All goods supplied are covered by LA Micro Group (UK) Ltd warranty and /or a 3rd party warranty. For more details please speak to your account manager.

LA Micro Group (UK) Ltd is a company registered in England and Wales. Registered number: 05113241. Registered office: 39/40 The Arches, Alma Road, Windsor, Berkshire, SL4 1QZ.

# EXHIBIT "7"



**GELLERT
SEITZ
BUSENKELL
◆ BROWN, LLC**

Gary F. Seitz
215.238.0011
gseitz@gsbblaw.com

January 28, 2026

By Email To:
David B. Golubchik, Esq.
Todd M. Arnold, Esq.
Levene, Neale, Bender, Yoo & Golubchik L.L.P.
2818 La Cienega Ave
Los Angeles, CA 90034

RE:        Arkadiy Lyampert
           Chapter 11 bankruptcy 1:25-bk-12344-VK
           US Bankruptcy Court Central District of California

Dear Mr. Golubchik and Mr. Arnold:

This firm represents LA Micro Group (UK) Ltd ("LA Micro UK" or the "Company") in connection with the Chapter 11 bankruptcy case of Arkadiy Lyampert. We write in response to your January 20, 2026 correspondence requesting extensive documents and information pursuant to Federal Rule of Bankruptcy Procedure 2004.

While LA Micro UK acknowledges Mr. Lyampert's bankruptcy filing, the Company must object to your requests on multiple grounds as set forth below.

## I. JURISDICTIONAL OBJECTIONS

A. Lack of Personal Jurisdiction

LA Micro UK is a United Kingdom company, organized under the laws of England and Wales, with its registered office located in Windsor, Berkshire, United Kingdom. The Company does not maintain offices, employees, or operations in the United States, let alone the Central District of California. LA Micro UK has not consented to the jurisdiction of the United States Bankruptcy Court for the Central District of California, and your request improperly attempts to exercise extraterritorial jurisdiction over a foreign entity.

1201 N. Orange Street, Suite 300
Wilmington, DE 19801
P. 302.425.5800  F. 302.425.5814

901 Market Street, Suite 3020
Philadelphia,PA 19107
P. 215.238.0010  F. 215.238.0016

www.GSBBLAW.com



Bankruptcy courts have consistently found that requests for alternative service of subpoenas on foreign nationals abroad constitute attempts to avoid the territorial and jurisdictional limitations of Rule 45, and that subpoenas cannot be issued on foreign nationals located abroad. The territorial limits of Rule 45 apply to Rule 2004 examinations through Federal Rule of Bankruptcy Procedure 9016.

B. Improper Service and Procedure

Your January 20, 2026 email does not constitute proper service under either the Federal Rules of Bankruptcy Procedure or applicable international law governing service on foreign entities. Any examination or discovery from a UK company would require compliance with the Hague Evidence Convention or letters rogatory procedures.

## II. SUBSTANTIVE OBJECTIONS

A. Overly Broad and Unduly Burdensome

Your requests seek eight years of comprehensive financial records, employee information, confidential business documents, and extensive operational data. This sweeping demand is:

>    Disproportionate to any legitimate bankruptcy purpose

>    Unduly burdensome on a foreign company not subject to U.S. bankruptcy proceedings

>    Lacking in any reasonable limitation of scope or timeframe justification

B. Lack of Relevance

Rule 2004 examinations must be reasonably related to the debtor's financial affairs, assets, or liabilities. Many if not most of your requests seek information about LA Micro UK's internal operations, employee compensation, and business dealings that have no apparent connection to Mr. Lyampert's individual bankruptcy estate or his financial condition.

C. Confidential and Proprietary Information

Your requests seek highly sensitive commercial information including:

>    Confidential financial statements and tax returns

>    Proprietary business valuations

>    Confidential employee compensation data for approximately 70 employees

>    Sensitive financing and potential sale negotiations

>    Confidential agreements with third parties subject to non-disclosure provisions



Disclosure of such information to a minority shareholder and party in interest of a competitor would violate the Company's duties to its employees, other stakeholders, and business partners, and could cause substantial competitive harm.

D. Premature Discovery Absent Adversary Proceeding / Pending Proceeding Bar

While Rule 2004 permits broad examination, your requests appear designed to support either anticipated litigation concerning Mr. Lyampert's alleged equity interest in LA Micro UK or to support existing litigation of these same issues pending in the UK commenced by Mr. Lyampert. Such disputed ownership claims are properly adjudicated through litigation in the appropriate forum or perhaps an adversary proceeding with appropriate discovery limits under the applicable Rules of Civil Procedure, not through Rule 2004's more liberal examination procedures.

We note that the bankruptcy court in the Central District of California adheres to the Rule 2004 bar in situations such as this where there is pending parallel litigation to prevent an end run around the discovery limitations in the pending suits. Mr. Lyampert commenced litigation in the United Kingdom before filing his bankruptcy petition concerning the very same ownership dispute that underlies these discovery requests.  In *In re Golden Sphinx Ltd.* 2023 WL 2823391 (Bankr. C.D. Cal. 2023), the Bankruptcy Court held that the pending proceeding rule applied to the creditor's motion for a Rule 2004 exam even though the discovery deadline had passed in the pending state and federal court suits. Allowing Mr. Lyampert to use Rule 2004 to obtain discovery unavailable in the UK proceeding would undermine both the pending proceeding rule and principles of international comity.

E. Privacy and Data Protection Concerns

As a UK company, LA Micro UK is subject to the General Data Protection Regulation (GDPR) and UK data protection laws. Your requests seek personal data concerning approximately 70 employees, including detailed compensation information. The Company cannot lawfully disclose such information without proper legal basis under UK law, and doing so could expose the Company to significant regulatory penalties.

F. Disputed Underlying Premise

Your letter assumes Mr. Lyampert holds a 50% equity interest in LA Micro UK and is entitled to shareholder information as a matter of right. The Company does not concede these assertions and reserves all rights with respect to any claims concerning ownership, shareholder status, or information rights.  As you are undoubtedly aware, Mr. Lyampert sold his interest back to the company in 2018 and now that this bankruptcy has been filed, the state court injunction may be dissolved, and when that happens my client is standing by ready to transfer the funds to the debtor in possession account in exchange for the shares.  The failure of your client to list the agreement in his Schedules is troubling.



Levene, Neale, Bender,
Yoo & Golubchik L.L.P.
January 28, 2026
Page 4

## III. PROCEDURAL DEFICIENCIES

A. Insufficient Meet and Confer

Your email does not constitute adequate "meet and confer" under Local Bankruptcy Rule 2004-1. The Rule contemplates meaningful discussion to narrow issues and resolve disputes cooperatively. Your correspondence instead provides a four-business-day ultimatum before threatened motion practice, without any genuine attempt to discuss the scope, burden, or appropriateness of your demands.

B. Unreasonable Timeline

Demanding production of eight years of comprehensive records from a foreign company within six days is manifestly unreasonable and demonstrates the absence of good faith cooperation.

## IV. RESERVATION OF RIGHTS

LA Micro UK expressly reserves all rights, defenses, and objections, including without limitation:

>   All jurisdictional defenses

>   All objections based on international comity

>   All objections based on foreign law, including UK company law and GDPR

>   All claims of privilege, confidentiality, and work product protection

>   All objections based on relevance, proportionality, and undue burden

>   All rights to contest Mr. Lyampert's alleged ownership interest or shareholder status

This response does not constitute an appearance in the bankruptcy proceeding, consent to jurisdiction, or waiver of any defense.

## V. RULE 9011 CONCERNS AND RESERVATION OF RIGHTS

LA Micro UK is deeply concerned that the threatened Rule 2004 motion, if filed, may violate Federal Rule of Bankruptcy Procedure 9011. By making a Rule 2004 request without disclosing:

- The pending UK litigation on the identical ownership dispute;
- The jurisdictional defects in compelling a foreign entity with no U.S. contacts;
- The pending proceeding rule's application;
- The failure to list the agreement in the Schedules;
- The impossibility of compliance within the demanded timeline; and
- The need for international service procedures.

debtor's counsel may be presenting a motion for an improper purpose and asserting legal contentions not warranted by existing law.

LA Micro UK expressly reserves all rights to seek sanctions under Rule 9011, 11 U.S.C. § 105(a), and the Court's inherent authority if debtor's counsel proceeds with filing a Rule 2004 motion that fails to address these fundamental defects.

This reservation is made in accordance with Rule 9011's 21-day safe harbor provision. Should counsel wish to avoid potential sanctions exposure, we are available to discuss a more appropriate and legally sound approach to any legitimate discovery needs.

## V. CONCLUSION

For the foregoing reasons, LA Micro UK objects to your Rule 2004 requests. Should you wish to discuss a more appropriately tailored and jurisdictionally proper approach to any legitimate discovery needs, we remain available for substantive discussions.

Very truly yours,

GELLERT SEITZ BUSENKELL & BROWN, LLC

Gary F. Seitz [DE Atty ID 4457]
gseitz@gsbblaw.com
In our capacity as U.S. Bankruptcy Counsel for LA Micro Group (UK) Ltd

cc: Lee Waller, LA Micro Group (UK) Ltd

# EXHIBIT "8"

**Todd M. Arnold**

| | |
|---|---|
| **From:** | David B. Golubchik |
| **Sent:** | Friday, January 30, 2026 5:52 AM |
| **To:** | Simon Walsh |
| **Cc:** | Todd M. Arnold; Ashleigh MacCormack |
| **Subject:** | Re: In re Lyampert [SALAW-LIVE.FID6238309] |

Who does?

**DAVID B. GOLUBCHIK,** Esq.
**LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.**
2818 La Cienega Ave.  |  Los Angeles, CA  90034
Phone 310 229 1234  |  Direct 310 229 3393  |  Cell 310 490 0330
dbg@lnbyg.com **|  www.lnbyg.com**


On Jan 30, 2026, at 4:16 AM, Simon Walsh <Simon.Walsh@salaw.com> wrote:


Dear Mr Golubchik

Thank you for your email.

My firm does not act for Mr Bell in relation to Mr Lyampert's Chapter 11 proceedings.

Yours sincerely


Simon Walsh

**SIMON WALSH**

PARTNER

COMMERCIAL LITIGATION & DISPUTE RESOLUTION TEAM

**Direct Tel:** 01727 798 085  **|  Mob:** 07725 245 723
simon.walsh@salaw.com

---

**salaw.com**  |  **Tel** 01727 798 000  |  **Fax** 01727 798 070  |  LinkedIn    Instagram    Facebook

SA Law LLP, Gladstone Place, 36-38 Upper Marlborough Road, St Albans, Hertfordshire AL1 3UU
**Meetings available by appointment:** 91 Wimpole Street, London W1G 0EF

---

**From:** David B. Golubchik <DBG@lnbyg.com>
**Sent:** 29 January 2026 00:56
**To:** Simon Walsh <Simon.Walsh@salaw.com>
**Cc:** Todd M. Arnold <TMA@lnbyg.com>; Ashleigh MacCormack <Ashleigh.MacCormack@salaw.com>
**Subject:** RE: In re Lyampert [SALAW-LIVE.FID6238309]

Simon,

While we are proceeding with an examination of the company, the Debtor needs to proceed with an examination of Mr. Bell as well.  To the extent that he has certain records which the company does not have, they are relevant.  In addition, Mr. Bell's oral examination will be necessary since he is the person on behalf of the company intimately involved in the litigation and decision making.  As a result, I again attempt to meet and confer with you in good faith with respect to scheduling the documents to be produced below and scheduling Mr. Bell's examination.  The documents requested are set forth in my 27 December 2025 email below and reprinted herein for ease of reference:

1. All financial statements including, without limitation, bank account balances, balance sheet, profit and loss statements, income statements, and tax returns;
2. All formal and information valuations of LAMUK, its assets and/or equity interests therein;
3. All documents supporting efforts to obtain financing for LAMUK including, without limitation, applications for financing;
4. All documents supporting efforts to sell assets or equity interests in LAMUK including, without limitation, marketing materials, prospectus, projections …  (we are aware that in 2022, Mr. Bell was discussing a potential sale of his equity interest in LAMUK with a company in California and/or US);
5. All documents reflecting calculation and compensation paid to any officers, directors and shareholders of LAMUK;
6. All documents reflecting calculation and dividends paid to any shareholders of LAMUK;
7. A complete list of all employees of LAMUK and their respective compensation, including payroll and operations records, annual payroll summaries, documents reflecting total employee compensation, and records showing payroll obligations and liabilities (we understand that LAMUK employs approximately 70 employees with total annual payroll exceeding £7 million.);
8. All court-ordered costs owed by Frenkel/Inc to LAMUK and Dave Bell which remain outstanding;
9. Any agreements between Mr. Bell and any third parties, including Frenkel and his agents, concerning the ownership of LAMUK and potential transaction with respect to Mr. Lyampert's equity therein.  If documents are not being produced based on confidentiality provisions, please identify the document and the confidentiality provision therein.

Please advise so that we can proceed.

Thank you

2

**DAVID B. GOLUBCHIK,** Esq.

**LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.**
2818 La Cienega Ave  **|**  Los Angeles, CA  90034
Phone  310 229 1234  **|**  Direct  310 229 3393  **|**  Mobile  310 490 0330
dbg@lnbyg.com  **|**  **www.lnbyg.com**

The preceding E-mail message is subject to Levene, Neale, Bender, Yoo & Golubchik  L.L.P.'s
email policies which can be found at http://www.lnbyg.com/disclaimers.htm.

 Please consider the environment before printing this email

**From:** Simon Walsh <Simon.Walsh@salaw.com>
**Sent:** Tuesday, January 20, 2026 10:24 AM
**To:** David B. Golubchik <DBG@lnbyg.com>
**Cc:** Todd M. Arnold <TMA@lnbyg.com>; Ashleigh MacCormack <Ashleigh.MacCormack@salaw.com>
**Subject:** RE: In re Lyampert [SALAW-LIVE.FID6238309]

Dear Mr Golubchik

You should contact the company's General Manager, Lee Waller whose email address is:
lee.waller@lamicro.co.uk.

Yours sincerely

Simon Walsh

**SIMON WALSH**

PARTNER

COMMERCIAL LITIGATION & DISPUTE RESOLUTION TEAM

**Direct Tel:** 01727 798 085  **|  Mob:** 07725 245 723

simon.walsh@salaw.com

**salaw.com**  |  **Tel** 01727 798 000  |  **Fax** 01727 798 070  |  LinkedIn   Instagram   Facebook

SA Law LLP, Gladstone Place, 36-38 Upper Marlborough Road, St Albans, Hertfordshire AL1 3UU
**Meetings available by appointment:** 91 Wimpole Street, London W1G 0EF

**From:** David B. Golubchik <DBG@lnbyg.com>
**Sent:** 19 January 2026 15:32
**To:** Simon Walsh <Simon.Walsh@salaw.com>
**Cc:** Todd M. Arnold <TMA@lnbyg.com>; Ashleigh MacCormack <Ashleigh.MacCormack@salaw.com>
**Subject:** Re: In re Lyampert [SALAW-LIVE.FID6238309]

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034

A true and correct copy of the foregoing document entitled **Notice Of Ex Parte Motion And Ex Parte Motion, Pursuant To Federal Rule Of Bankruptcy Procedure 2004, Local Bankruptcy Rule 2004-1, And The Hague Convention For (1) The Production Of Documents By La Micro Group (Uk) Limited And Oral Examination Of David Bell And (2) The Issuance Of A Letter Of Request For International Judicial Assistance To Compel The Foregoing; Memorandum Of Points And Authorities And Declarations In Support Thereof]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On *February 17, 2026* I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Michael S Adler    madler@ta-llp.com
- Todd M Arnold    tma@lnbyg.com
- Katherine Bunker    kate.bunker@usdoj.gov
- David Coats    dacoats@raslg.com
- David B Golubchik    dbg@lnbyg.com, dbg@lnbyg.com
- Dirk O Julander    doj@jbblaw.com
- Carmela Pagay    ctp@lnbyg.com
- Robert J Pfister    rpfister@pslawllp.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **February 17, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

***VIA OVERNIGHT***
**LAMUK Counsel**
Gellert Seitz Busenkell & Brown, LLC
Attn: Gary F. Seitz
1201 N. Orange Street, Suite 300
Wilmington, DE 19801

⊠ Service list for attached

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 17, 2026 | Kayleen Chang | /s/ Kayleen Chang |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

***VIA EXPRESS DELIVERY***

**LAMUK:**
Astro House Astro House, Unit 2
Attn: Lee Waller
Attn: Dave Bell
Bracknell
Berkshire, England, RG12 9BG

**LAMUK's Nominee Secretary**
Temple Secretaries Limited
788-790 Finchley Road
London, England NW11 7TJ

**Bell**
2 Fisher House
Hillside Park
Sunningdale
Ascot, England, SL5 9RP

**Bell Counsel**
SA Law, LLP
Attn: Simon Walsh, Partner
Gladstone Place, 36 38
Upper Marlborough Road
St Albans
Hertfordshire, England AL1 3UU

***VIA EMAIL***

Lee Waller - lee.waller@lamicro.co.uk

Gary F. Seitz - gseitz@gsbblaw.com

Simon Walsh - simon.walsh@salaw.com